In re Charles R. SCHIFFMAN, Debtor.

No. 05–46152–13.

United States Bankruptcy Court, D. Oregon.

March 2, 2006.

---

Bradley O. Baker, for Creditor Aaron Thomas Plaintiff or Petitioner.

Robert J. Vanden Bos, Vanden, Bos & Chapman, Portland, OR, for Debtor Defendant or Respondent.

## MEMORANDUM OPINION

RANDALL L. DUNN, Bankruptcy Judge.

This case tests the limits of a debtor's rights to alter the court's chapter 13 plan form over the objections of the chapter 13 trustee and concerned creditors. The debtor is attempting through proposed additional plan provisions to establish a right to pay off his chapter 13 plan early, without being obligated to pay all allowed unsecured claims in full and without having to go through the plan modification process. In other words, the debtor seeks the right to be able to pay off his chapter 13 plan and receive a discharge immediately after confirmation of the plan, if he chooses, without having to disclose the source of payment funds, without notice to the chapter 13 trustee, creditors and other interested parties, and without having to obtain an order of the court.

At the initial confirmation hearing in this case, I held that two paragraphs the debtor had added to the court's form chapter 13 plan were inappropriate as a matter of law and sustained objections to those provisions. After allowing the parties an opportunity to make a record of their positions with respect to my rulings, I state my reasons for disallowing the debtor's proposed plan provisions as follows:

### Background

The debtor, Charles R. Schiffman ("Mr.Schiffman"), filed his chapter 13 petition on October 14, 2005. Docket No. 1. Mr. Schiffman is no "run of the mill" chapter 13 debtor. On his Schedule I, Mr. Schiffman states that he is employed as Executive Vice–President of the Jewish Federation of Portland, with monthly gross income of $10,481. Docket No. 1, Schedule I. After payroll withholdings for taxes, Social Security, insurance and charitable contributions totaling $3,984, and monthly expenses totaling $6,808, he reports "excess income" of $919 per month to fund his chapter 13 plan. Docket No. 1, Schedule J.[1]

This court's Local Bankruptcy Form ("LBF") 1300 is the chapter 13 plan form (the "Chapter 13 Plan Form"). Although LBF 1300 ultimately was approved and promulgated by all of the bankruptcy judges for the District of Oregon, it was submitted in draft form for comments to various chapter 13 constituencies prior to its approval, including debtors' counsel, creditors' counsel, the chapter 13 trustees, the Internal Revenue Service and the Oregon Department of Justice. The Chapter

---

**1.** Calculating "excess income" from Mr. Schiffman's income and expense totals set forth on his Schedules I and J yields –$311 per month. *See* Docket No. 1, Schedules I and J. To date, Mr. Schiffman has projected at least $919 "excess income" per month, in each iteration of his chapter 13 plan. *See* Docket Nos. 4, 16 and 31. However, using his own income and expense numbers from his Schedules I and J, Mr. Schiffman's projected net disposable income calculation clearly is wrong-high by about $1,230 per month.

13 Plan Form was developed to handle efficiently the high volume of chapter 13 cases in Oregon, and chapter 13 debtors are required to use LBF 1300 by Local Bankruptcy Rule ("LBR"). *See* LBR 3015–1.B.1.

The Chapter 13 Plan Form was drafted to treat the interests of the various parties in chapter 13 proceedings evenhandedly. It covers issues commonly faced in chapter 13 cases, with flexibility to allow for the unique circumstances of particular cases.

Mr. Schiffman's initial plan used LBF 1300 but added eight separate, nonuniform paragraphs to the form text. *See* Docket No. 4, pp. 2–3. The chapter 13 trustee objected to Paragraphs 10, 11 and 14 in Mr. Schiffman's plan and requested that they be stricken. *See* Docket No. 15. On December 2, 2005, Mr. Schiffman filed a Notice of Pre–Confirmation Modification of Plan, with a proposed amended plan (the "Amended Plan"), dated December 1, 2005, attached. *See* Docket No. 16. The Amended Plan used LBF 1300, but added nine separate, nonuniform paragraphs to the form text. None of the nonuniform paragraphs in the initial plan to which the chapter 13 trustee objected were removed in the Amended Plan. However, Paragraphs 10 and 11 were expanded to add more text. *Compare* Docket No. 16, pp. 3–4 *with* Docket No. 4, pp. 2–3. Creditor/claimant Aaron Thomas ("Mr.Thomas") objected to confirmation of the Amended Plan on a number of grounds, including: "The plan improperly modifies the standard language of the Chapter 13 form Plan in violation of Local rules." *See* Docket No. 18, pp. 1–2.

At the initial confirmation hearing, held on December 22, 2005, the court issued an order to allow discovery among the parties to proceed and adjourned the confirmation hearing to January 30, 2006, to accommodate a possible settlement conference among the parties and further scheduling. *See* Docket Nos. 22 and 23. In addition, the court discussed with the parties the nonuniform plan provisions included in the Amended Plan and sustained the chapter 13 trustee's and Mr. Thomas' objections to Paragraph 14, and sustained Mr. Thomas' objection to Paragraph 17. The court allowed the parties until January 20, 2006, to file their memoranda to make a further record with respect to the court's rulings. The court stated that a written opinion elaborating on the court's rationale for disallowing Paragraphs 14 and 17 in the Amended Plan would be issued thereafter. *See* Docket No. 22.

On January 6, 2006, the chapter 13 trustee filed his Memorandum ("Memorandum") concerning his objections to the Amended Plan and joined in the objection of Mr. Thomas to Paragraph 17. *See* Docket No. 28.

On January 16, 2006, Mr. Schiffman filed a second Notice of Pre–Confirmation Modification of Plan, with a proposed further amended plan (the "Second Amended Plan"), dated January 13, 2006, attached. *See* Docket No. 31. In the Second Amended Plan, the Paragraphs 14 and 17 provisions of the Amended Plan that I disapproved are deleted. On January 20, 2006, Mr. Schiffman filed his Memorandum in Support of Confirmation of Chapter 13 Plan Dated December 1, 2005 ("Supporting Memorandum"). Attached to the Supporting Memorandum was the Affidavit of Robert J. Vanden Bos ("Vanden Bos Affidavit"), Mr. Schiffman's counsel. *See* Docket No. 32. In addition, on January 20, 2006, Mr. Schiffman filed his Objection ("Objection") to certain provisions of Paragraph 1 of the Chapter 13 Plan Form. *See* Docket No. 33.

At the adjourned confirmation hearing on January 30, 2006, counsel for Mr. Schiffman reported that a settlement had

been negotiated with Mr. Thomas that might result in the dismissal of Mr. Schiffman's chapter 13 case.

### Discussion

▮ Authority has been delegated to the United States district courts and bankruptcy courts to adopt local rules and forms for the conduct of proceedings before them, but such rules and forms must be consistent with the substantive provisions of the federal Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr.P. 9029; *In re Sunahara*, 326 B.R. 768, 782 (9th Cir. BAP 2005); and *In re Bersher Invs.*, 95 B.R. 126, 129 (9th Cir. BAP 1988).[2]

The target of the paragraphs in the Amended Plan that I have disallowed, as confirmed in the Objection (*see* Docket No. 33, p. 2) and in the Supporting Memorandum (*see* Docket No. 32, p. 4), is Paragraph 1 ("Paragraph 1") of the Chapter 13 Plan Form, which reads as follows:

1. The debtor shall pay to the trustee; (a) a periodic payment of $_____ every _____ (insert either month or quarter); (b) all proceeds from avoided transfers; (c) upon receipt by the debtor, all tax refunds attributable to prepetition tax years and net tax refunds attributable to postpetition tax years (i.e., tax refunds not included on Schedule I, less tax paid by debtor for a deficiency shown on any tax return for that same tax year or tax paid by setoff by a tax agency for a postpetition tax year) for: ___ the life of the plan, or ___ 36 months from the date the first plan payment is due *(Check the applicable provision; if neither is checked, "for the life of the plan" applies);* (d) a lump sum payment of $____ on _____ date; and (e) _____. [Italics in original.]

Paragraph 1 was drafted consistent with provisions of Sections 1322(a)(1) and (b)(10), 1306(a), and 1327(b) and (c) of the Bankruptcy Code.[3]

Section 1322(a)(1), dealing with the content of chapter 13 plans, states that, "The plan shall...provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan...." Section 1322(b)(10) provides that, "[s]ubject to subsections (a) and (c) of this section, the [chapter 13] plan may...include any other appropriate provision not inconsistent with...title [11]."

The terms "future income" and "future earnings" are not defined in the Bankruptcy Code. Paragraph 1 includes in subpart (a) a blank to insert the debtor's income, net of expenses, reflected in Schedules I and J of the debtor's schedules. However, future income and future earnings are not necessarily coextensive with the "excess"

---

**2.** LBR 1001–1.C., entitled "SCOPE OF THE RULES; CONSTRUCTION," provides: "These LBRs supplement the [Federal Rules of Bankruptcy Procedure ("FRBPs")], and any amendments thereto; must be used in conjunction with, not exclusive from, the FRBPs; and shall be construed so as to be consistent with the FRBPs and to promote the just, speedy, and inexpensive determination of every case and proceeding."

**3.** Unless otherwise noted, all section references are to provisions of the federal Bankruptcy Code, 11 U.S.C. §§ 101 et seq., as they existed prior to the October 17, 2005 effective date ("BAPCPA Effective Date") of most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Since Mr. Schiffman's chapter 13 petition was filed prior to the BAPCPA Effective Date, BAPCPA provisions generally do not apply to this case.

or net disposable income reported on those schedules.

Section 1306(a) provides that:

Property of the estate includes, in addition to the property specified in section 541 of this title (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

Section 1327(b) and (c), dealing with the effects of confirmation of a chapter 13 plan, provide that:

(b) *Except as otherwise provided in the plan* or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor. (c) *Except as otherwise provided in the plan* or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan. [Emphasis added.]

In Paragraph 1, two categories of chapter 13 estate assets are not revested in the debtor and are treated as future earnings or income and committed to funding the plan: 1) avoided transfers, including fraudulent conveyances of the debtor, that are recovered during the life of the plan; and 2) prepetition and postpetition tax refunds that are received by the debtor during the life of the plan.

The Bankruptcy Code allows and fairness concerns strongly recommend that the debtor's fraudulent conveyances and other avoided transfers recovered during the life of the plan be included as future income submitted to the chapter 13 trustee for distribution under the plan. Indeed, any debtor opposed to coughing up fraudulent conveyance recoveries arguably would have a difficult time satisfying the Section 1325(a)(3) requirement that the plan be proposed in good faith. The Paragraph 1 provision concerning avoided transfers is not in issue in this case and has not been objected to by Mr. Schiffman, even though it arguably requires payment of "actual" as opposed to "projected" future income.

■ The rationale for including tax refunds received by the debtor during the life of the plan as future earnings is if a debtor is regularly receiving substantial tax refunds, the debtor probably is over-withholding, and consequently underestimating future income. This assumption is subject to rebuttal based upon an appropriate evidentiary showing.

The tax refund provisions of Paragraph 1(c) of the Chapter 13 Plan Form serve the administrative convenience of debtors and the chapter 13 trustee. In their absence, alternative measures would be needed to insure that potential future income from tax refunds is adequately disclosed by debtors and included in their disposable income calculations, since tax refunds generally do not appear on Schedule I. I do not buy the idea that the chapter 13 trustee should be burdened with the responsibility for burrowing into the debtor's tax records to determine whether the debtor's withholdings are appropriate and presenting evidence in support of an objection to confirmation in order to require the debtor to alter his or her withholdings to minimize or eliminate future tax refunds. It is debtors' responsibility at the commencement of their bankruptcy cases to make full and accurate disclosures of their financial affairs.

[T]he very purpose of certain sections of the [Bankruptcy Code] ... is to make certain that those who seek the shelter of [bankruptcy] do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction. *Boroff v. Tully,* 818 F.2d 106, 110 (1st Cir.1987).

Of course, the court could require debtors to provide evidence 1) as to how many dependents are claimed on their W–4 forms, and that the number of dependents claimed results in appropriate withholdings and will not result in material refunds, with appropriate updates during the time that their chapter 13 cases are pending, and 2) report *every* change in their income during the lives of their chapter 13 cases. Prior experience tends to indicate that debtors would regularly default in the performance of such reporting obligations with the potential consequence that their cases would be dismissed upon motion of the chapter 13 trustee.

In this case, the record establishes that for the three prepetition tax years of 2002, 2003, and 2004, Mr. Schiffman received the following refunds:

| Agency | 2002 | 2003 | 2004 | Total |
|--------|------|------|------|-------|
| Federal | $4,328 | $4,513 | $3,078 | $11,919 |
| State | $1,113 | $1,289 | $1,248 | $ 3,650 |
| Totals: | $5,441 | $5,802 | $4,326 | $15,569 |

*See* Vanden Bos Affidavit, Docket No. 32, p. 5. Accordingly, for the three year period prior to 2005, the year in which Mr. Schiffman filed his chapter 13 petition, Mr. Schiffman's federal and state tax refunds combined averaged $5,189.67 per year.

If a debtor's tax withholdings from payroll are appropriate, the debtor likely will receive negligible or no tax refunds during the life of the chapter 13 plan, and the provision of the Chapter 13 Plan Form including tax refunds received during the life of the plan as future income or earnings will not have much, if any impact. However, the impact of including tax refunds as future earnings in each individual case is a fact-based determination over the life of each chapter 13 plan, and the history of Mr. Schiffman's tax refunds for the years preceding his bankruptcy filing tend to indicate that Mr. Schiffman's tax refunds during the life of his chapter 13 plan will be significant.

In the Objection, Mr. Schiffman objects to the inclusion of the tax refund provision in Paragraph 1 because it requires "the payment of 'actual' future income as opposed to 'projected' income." Leaving aside for the moment the ultimate absurdity of insisting that only a plan that uses fictional projections rather than real numbers in defining the boundaries of future income is confirmable, Mr. Schiffman relies primarily on the decision of the Ninth Circuit in *In re Anderson,* 21 F.3d 355 (9th Cir.1994), to support his Objection.

In *Anderson,* the Ninth Circuit held that a chapter 13 trustee could not require as a condition to confirmation of the debtors' chapter 13 plan that the debtors sign a "Best Efforts Certification," that in effect, required the debtors to agree, as a covenant independent of their chapter 13 plan, to pay all of their *actual* disposable income to the trustee during the life of the plan. Section 1325(b)(1)(B) provides that

[i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan... the plan provides that all of the debtor's *projected* disposable income to be received in the three-year period beginning on the

date that the first payment is due under the plan will be applied to make payments under the plan. [Emphasis added.]

In light of the plain language of the statute, the Ninth Circuit determined that the condition pressed by the trustee was inconsistent with the condition to confirmation that Congress actually put in the Bankruptcy Code in Section 1325(b)(1)(B). *See Id.* at 357–58.

In addition, the Ninth Circuit pointed out that the trustee's proposed Certification requirement would allow the trustee to effect plan modifications in terms of periodic adjustments to plan payments, without following the procedures for plan modification set forth in Section 1329 and without a court order. The Ninth Circuit held that the trustee could not cut off the statutory rights of the debtors to request the court to disapprove plan modifications proposed by the trustee, based on the axiom, "We may not construe a statute so to make any part of it mere surplusage." *Id.* at 358; *United States v. Mehrmanesh,* 689 F.2d 822, 829 (9th Cir.1982).

"Mere surplusage" is precisely what Mr. Schiffman would have the court make of Section 1306(a), which includes pre– and postpetition tax refunds as property of the chapter 13 estate, and Section 1327(b), which revests all property of the estate in the debtor *"except as otherwise provided in the plan."* Mr. Schiffman cites *In re Heath,* 182 B.R. 557 (9th Cir.BAP1995), and *In re Kuehn,* 177 B.R. 671 (Bankr. D.Ariz.1995), for the argument that the language of Paragraph 1 including tax refunds received during the life of the plan as plan payments, must be stricken.

In *Heath,* the Bankruptcy Appellate Panel confronted two cases in which the chapter 13 plan form did not require the submission of tax refunds received by the debtors during the lives of their respective plans to the trustee for distribution to creditors. The trustee argued that all income tax refunds received during the first 36 months of the debtors' plans should be paid over to the trustee for distribution, without submitting any evidence in either case that future tax refunds could be projected or that the debtors were overwithholding. *In re Heath,* 182 B.R. at 559 and 560. Citing *Anderson,* the Bankruptcy Appellate Panel held that in the absence of some evidentiary showing as to projected tax refunds, Section 1325(b) did not require the inclusion of tax refunds received by the debtors as projected disposable income. *Id.* at 560–61.

In *Kuehn,* the bankruptcy court held that the trustee could not require the debtors to pay over all tax refunds received by the debtors during the life of their chapter 13 plan without projecting whether there would be any tax refunds. Again, the language of the form chapter 13 plan in *Kuehn* did not require the submission of tax refunds received by the debtors as plan payments, and the bankruptcy court, citing *Anderson,* determined that in the absence of evidence of projected tax refunds, requiring the submission of *actual* tax refunds received as a condition to confirmation would be inconsistent with the Section 1325(b)(1)(B) condition of submission of *projected* disposable income. *In re Kuehn,* 177 B.R. at 672–73.

In this case, as noted above, the record reflects that Mr. Schiffman received federal and state tax refunds for the tax years 2002 through 2004 totaling $15,569. Based on that record, Mr. Schiffman projects tax refunds of $15,569 for the first 36 months of his chapter 13 plan. *See* Vanden Bos Affidavit, Docket No. 32, p. 6. No future income from projected tax refunds is disclosed in Mr. Schiffman's Schedules I and J. *See* Schedules I and J, Docket No. 1.

As opposed to the chapter 13 plan forms considered in *Heath* and *Kuehn*, the Chapter 13 Plan Form adopted in the District of Oregon generally requires that pre– and postpetition tax refunds received by the debtor during the life of the plan be included among the payments submitted to the trustee for distribution to creditors. As stated above, that provision is based on the assumption that if the debtor receives substantial tax refunds during the life of a chapter 13 plan, absent contrary evidence, the debtor likely is overwithholding, and such receipts should be included in future income or earnings dedicated to the plan under Section 1322(a)(1). Such refunds are property of the estate, as defined in Section 1306(a), and Section 1327 allows such property *not* to be revested in the debtor, *if the plan so provides.* This provision of the Chapter 13 Plan Form exists whether the trustee or any unsecured creditor with an allowed claim objects to confirmation or not. Consequently, Section 1325(b)(1)(B) may or may not be relevant to its consideration. It is consistent with the provisions of the Bankruptcy Code and is not inconsistent with the Ninth Circuit's decision in *Anderson,* which disapproved a condition to confirmation that was inconsistent with the plain language of the Bankruptcy Code but did not hold that a confirmable chapter 13 plan cannot be based on anything but the debtor's projected fantasies. Nothing in *Anderson* says that reality can never intrude on the confirmation process in chapter 13.

*The Disallowed Provisions*

A. *Paragraph 14*

■ Paragraph 14 of the Amended Plan reads as follows:

At the time of any proposed payoff of debtor's plan prior to 36 months after the first payment is due, Debtor(s') obligation under Paragraph 1 of the Plan to

pay their projected disposable income tax refunds to the Trustee can and shall be deemed satisfied upon payment to the Trustee of an amount equivalent to the annual average of Debtor(s') tax refunds for the three calendar years immediately preceding the petition date, multiplied by three, less the amounts of tax refunds for postpetition tax years actually paid by the Debtor(s) to the Trustee.

I sustained the objections of the chapter 13 trustee and Mr. Thomas to Paragraph 14 because it would allow a premature and arbitrary determination of future income or earnings of Mr. Schiffman in terms of tax refunds, both for prepetition and postpetition periods, to be received over the life of his chapter 13 plan. It likewise is objectionable in that it introduces an undefined term, "projected disposable income tax refunds," that is not defined in the Bankruptcy Code, the FRBPs or the court's Chapter 13 Plan Form and consequently adds inappropriate ambiguity to the plan.

In his Memorandum, the chapter 13 trustee advises that "until now [he] has not sought to strictly limit withholding on debtor's pay stubs, unless the withholding was clearly excessive, to help the debtor avoid incurring additional tax liability postpetition." Memorandum, Docket No. 28, p. 2. If the provisions of Paragraph 1 relating to payment of tax refunds received during the lives of debtors' chapter 13 plans are deleted or altered as proposed by Mr. Schiffman, two results are likely: The court would require greater disclosures by debtors as to their tax withholdings and changes in income and/or withholdings during the lives of their chapter 13 plans, and it is logical to assume that the chapter 13 trustee would scrutinize more carefully and raise objections more frequently concerning debtors' tax with-

holdings. These results would increase administrative expenses in almost all chapter 13 cases.

### B. *Paragraph 17*

█ Paragraph 17 of the Amended Plan provides:

> Without prejudice to the trustee's rights to assert that a payoff can not occur in the first 36 months of the plan without payment of 100% of claims, the trustee shall provide, if Debtor so requests, the amount of the payoff required to pay the plan base at the time of the intended payoff. The Trustee shall provide a payoff amount within a reasonable time after receipt of a written request from Debtor or Debtor's counsel.

I sustained Mr. Thomas' objection to Paragraph 17 for two reasons. At the time of the initial confirmation hearing in this case, the court was unaware that there were outstanding complaints that the chapter 13 trustee was not responding to reasonable requests of debtors or their counsel for information as to the status of plan payments. In fact, Mr. Schiffman's counsel confirms that:

> The standard policy of the Chapter 13 trustee's office in Portland, Oregon is that request for payoffs will be responded to in approximately 2 weeks time. My experience is that the trustee's office makes good on its policy and routinely processes payoff requests in two weeks or less. Vanden Bos Affidavit, Docket No. 32, pp. 3–4.

If the purpose of Paragraph 17 is to require the chapter 13 trustee to do what he already is doing, I find that it is useless surplusage. However, Mr. Schiffman's counsel complains that if a chapter 13 plan has run less than 36 months, the chapter 13 trustee does not provide payoff information without including the amount necessary to pay off 100% of allowed unsecured claims. *See* Vanden Bos Affidavit, Docket No. 32, p. 4. Mr. Schiffman's counsel concedes that under Paragraph 1, as it currently stands, there may be "no way to calculate the amount which may be owed for future 'actual' tax refunds...." *See* Supporting Memorandum, Docket No. 32, p. 7. If Paragraph 17 would require the chapter 13 trustee to provide plan payoff calculations at the beck and call of debtors and their counsel that are subject to challenge as incorrect or imprecise, it places an inappropriate burden on the chapter 13 trustee that I decline to impose.

Paragraph 17 further introduces the term "plan base" without definition in the Amended Plan. "Plan base" is not used or defined in the Bankruptcy Code, the FRBPs or the court's Chapter 13 Plan Form. I do not know what it means in relation to the payments of future income and earnings provided for in Paragraph 1. In his Memorandum, the chapter 13 trustee objected to the term "plan base" as unnecessary and ambiguous, and I find that it adds inappropriate ambiguity to the Amended Plan.[4]

### C. *What This Really is About*

█ The issues I confront in this case arise as fallout from the decision of the

---

4. In the Supporting Memorandum and in the Vanden Bos Affidavit, Mr. Schiffman argues that the term "plan base" is in common use among bankruptcy professionals and indeed, is used by the chapter 13 trustee in this district. *See* Supporting Memorandum, Docket No. 32, pp. 15–16, and Vanden Bos Affidavit, Docket No. 32, pp. 2–3. A proposed chapter 13 plan provision that both uses *and defines* the term "plan base" was not before me when I sustained Mr. Thomas' objection to Paragraph 17. Nothing in the Supporting Memorandum or the Vanden Bos Affidavit explains exactly what the term "plan base" is supposed to mean when used in conjunction with Paragraph 1 in the Chapter 13 Plan Form.

Ninth Circuit Bankruptcy Appellate Panel in *In re Sunahara*, 326 B.R. 768 (9th Cir. BAP 2005). The panel in *Sunahara* answered two questions: First, does the Bankruptcy Code permit payment of a chapter 13 plan in fewer than 36 months where debtor is not paying 100% of all allowed unsecured claims? *Id.* at 772.

The chapter 13 plan form in issue in *Sunahara* included a provision requiring that "[u]nless all allowed claims are paid in full, this Plan shall not be completed in fewer than 36 months from the first payment date." *Id.* at 770.[5] This language builds on the terms of Section 1325(b)(1), which provides:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

The plan form considered in *Sunahara*, in effect, treated the "three-year" language of Section 1325(b)(1) as imposing a temporal requirement that chapter 13 plans last for a minimum term of three years, unless the debtor pays all allowed unsecured claims in full earlier.

The general provision of the Bankruptcy Code dealing with chapter 13 plan duration is Section 1322(d), which provides:

The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

The language of Section 1322(d) compromises competing concerns reflected in the legislative history of the Bankruptcy Code: Chapter 13 was designed to allow individual debtors, with regular income, "to develop and perform under a plan for the repayment of . . . debts *over an extended period.*" H.R.Rep. No. 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. at p. 118 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6079. [Emphasis added.] However, Congress was concerned that wage earner plans in some cases under the Bankruptcy Act had been allowed to drag on for "seven to ten years. This has become the closest thing there is to indentured servitude . . . ." *Id.* at p. 117, U.S.Code Cong. & Admin.News 1978, pp. 5963, 6078.

Accordingly, Section 1322(d) hedges its duration language. It discusses plan periods of from three to five years, but it does not impose them. *See* K. Lundin, *Chapter 13 Bankruptcy* § 199.1, at 199–1 (3d ed.2000 and 2004 Supp.). In practice, and considering the above cited Section 1325(b)(1), added in the 1984 amendments to the Bankruptcy Code,

> most Chapter 13 debtors propose plans that are 36 months long. A plan shorter than 36 months will likely face an objection to confirmation unless the plan proposes to pay all claim holders in full. If the debtor is able to pay all claims in

---

5. In contrast, Paragraph 8 of the Chapter 13 Plan Form provides in part as follows:
   Except as otherwise explicitly provided by ¶ 10 [included for the debtor to insert non-form provisions to fit his or her particular plan circumstances], the debtor shall make

plan payments for the longer of either: (a) 36 months from the date the first payment is due under the original plan, unless the debtor pays 100% of all claims with interest if required; or (b) the time necessary to complete required payments to creditors.

less than 36 months, there is no duration objection to confirmation of a shorter plan. *Id.*

In *Sunahara*, the Bankruptcy Appellate Panel held that the Bankruptcy Code allows a debtor to modify a confirmed chapter 13 plan to complete the plan in less than 36 months without paying all claims in full, so long as the Bankruptcy Code requirements for plan modification are satisfied. *In re Sunahara*, 326 B.R. at 783–84. The Bankruptcy Appellate Panel further held that even if the chapter 13 trustee or an unsecured creditor objects to a debtor's proposed plan modification, the alternative three years of disposable income or 100% payment of allowed unsecured claims conditions of Section 1325(b)(1) do not apply.

Section 1329 governs chapter 13 plan modifications, and the Bankruptcy Appellate Panel held that "Section 1329(b) expressly applies certain specific Code sections to plan modifications but does *not* apply § 1325(b). Period." *Id.* at 781. [Emphasis in original.] [6]

The second question asked by the Bankruptcy Appellate Panel in *Sunahara* was: Does the bankruptcy court's local rule mandating use of a model plan including payment requirements not found in the Bankruptcy Code impermissibly abridge the debtor's rights? *In re Sunahara*, 326 B.R. at 782. The question virtually answers itself. The requirements of the plan form considered in *Sunahara*, that the plan continue for a minimum duration of 36 months unless all allowed claims are paid in full, conflicted with the nonmanda-

tory plan length provisions of Section 1322(d). The debtor could seek a waiver of the form plan provision through a post-confirmation plan modification. The Bankruptcy Appellate Panel reversed the decision of the bankruptcy court and remanded for a determination as to whether the plan modifications proposed by the debtor satisfied the requirements of Section 1329, as interpreted in the panel's decision. *Id.* at 783–84.

It is important in this case not to lose sight of the context in *Sunahara*. *Sunahara* was before the Bankruptcy Appellate Panel to review a post-confirmation plan modification decision. As noted in the dissenting opinion in *Sunahara*, FRBP 3015(g) requires that not less than 20 days notice of proposed plan modifications be sent to the debtor, the chapter 13 trustee and *all* creditors. *See* Fed. R. Bankr.P. 3015(g); *In re Sunahara*, 326 B.R. at 784. Moreover, as noted by the *Sunahara* majority:

> In determining whether to authorize a modification that reduces a [chapter 13] plan term to less than 36 months without full payment of allowed claims, the bankruptcy court should carefully consider whether the modification has been proposed in good faith. *See* § 1325(a)(3). Such a determination necessarily requires an assessment of a debtor's overall financial condition including, without limitation, the debtor's current disposable income, the likelihood that the debtor's disposable income will significantly increase due to increased

---

**6.** The position of the Bankruptcy Appellate Panel in *Sunahara* that Section 1329 unambiguously excludes consideration of Section 1325(b) in the context of plan modification is not universally accepted, including a contrary decision of the bankruptcy court for the District of Oregon. *See, e.g., In re Keller*, 329 B.R. 697 (Bankr.E.D.Ca.2005); and *In re*

*McKinney*, 191 B.R. 866, 869 (Bankr.D.Or. 1996). However, that issue is not before me in this case. For purposes of this decision, I assume that the Bankruptcy Appellate Panel correctly determined in *Sunahara* that Section 1325(b) potentially applies conditions to confirmation that do not apply in the context of plan modification.

income or decreased expenses over the remaining term of the original plan, the proximity of time between confirmation of the original plan and the filing of the modification motion, and the risk of default over the remaining term of the plan versus the certainty of immediate payment to creditors. *Id.* at 781–82.

Mr. Schiffman and his counsel want to run with the *Sunahara* decision to make a further point: They want the right to pay off Mr. Schiffman's chapter 13 plan at any time after confirmation without having to go through the plan modification process and without having to pay allowed unsecured claims in full. That is the underlying objective of the provisions that I have disapproved, as admitted by counsel for Mr. Schiffman at the initial confirmation hearing and in the Supporting Memorandum. *See* Supporting Memorandum, Docket No. 32, pp. 5, 10.

Proposals to pay off chapter 13 plans early are relatively uncommon. It is a sad reality of chapter 13 experience that most chapter 13 plans fail, with the associated cases being dismissed or converted to chapter 7. However, early payoffs can occur in chapter 13, generally in three circumstances: First, in light of postpetition appreciation of the debtor's real property, it may be possible to sell or refinance the property to allow for early completion of chapter 13 plan payments. *See, e.g., In re Sounakhene,* 249 B.R. 801 (Bankr.S.D.Ca. 2000).[7]

Second, a debtor may propose an early payoff based upon an inheritance, gift or loan from friends or relatives. *See, e.g., In re Smith,* 237 B.R. 621 (Bankr.E.D.Tx. 1999), *aff'd,* 252 B.R. 107 (E.D.Tx.2000); and *In re Easley,* 205 B.R. 334 (Bankr. M.D.Fla.1996).

Finally, a debtor may propose to pay off his or her chapter 13 plan with funds obtained from a source not disclosed in the debtor's schedules or original chapter 13 plan. *See, e.g., In re Profit,* 283 B.R. 567, 571 (9th Cir. BAP 2002); and *In re Forbes,* 215 B.R. 183, 186 (8th Cir. BAP 1997).

In each of the foregoing situations, an early payoff of the chapter 13 plan may offer substantial advantages to creditors as well as the debtor, even if all allowed claims are not being paid in full. All risks of a plan default and failure are avoided with an early payoff, and the return to creditors may be greater. *See e.g., In re Miller,* 325 B.R. 539, 542 (Bankr.W.D.Pa. 2005). However, early payoff proposals also present opportunities for abuse by the less than forthcoming debtor.

Cases in which an early payoff of a chapter 13 plan has been approved outside of the context of a plan modification over the objection of the chapter 13 trustee or a concerned creditor(s) appear to involve chapter 13 plans with fixed payments over a fixed term, or fixed payment percentages to classes of creditors. The rationale for these decisions is that plan payments do not have to continue in the amounts and for the duration provided for in the plan so long as the total amount of payments provided for in the plan and/or the fixed percentage to be paid each class of creditors is paid. *See, e.g., In re Smith,* 237 B.R. at

---

**7.** A concern in such cases is whether the debtor has placed an unreasonably low value on real estate in the schedules and chapter 13 plan at the commencement of the case to allow for an early refinance at the higher true value in order to obtain a discharge. While the record as stated by the *Sunahara* panel does not discuss the issue of good faith, one might reasonably question the value Mr. Sunahara placed on his real property at the outset of his chapter 13 case, when he proposed a refinance to pay off his chapter 13 plan within eight months after his case was filed and even before his chapter 13 plan was confirmed. *See In re Sunahara,* 326 B.R. at 770–71.

625 n. 8 and 626; and *Matter of Casper,* 154 B.R. 243, 246 (N.D.Il.1993). In other words, interpreting the confirmed chapter 13 plan as the debtor's contract with creditors, a deal is a deal. *See In re Miller,* 325 B.R. at 543; and *In re Pancurak,* 316 B.R. 173, 176 (Bankr.W.D.Pa.2004).

The District of Oregon Chapter 13 Plan Form does not definitively fix the total amount of plan payments at the outset of the case, and advisedly so. Paragraph 1 payments are not fixed at confirmation. Over time, the total to be paid under an Oregon debtor's plan is dependent upon a number of factors, including the debtor's future tax refunds and proceeds from avoided debtor transfers. With the element of indefiniteness as to the total of covenanted plan payments, if the debtor wants to pay off the chapter 13 plan early, a plan modification generally is required, as the early payoff usually will alter the total amount to be paid to creditors under the plan. *See, e.g., Massachusetts Housing Finance Agency v. Evora,* 255 B.R. 336, 342 (D.Mass.2000).[8]

Mr. Schiffman and his counsel would have it otherwise, but there is nothing inequitable or contrary to the Bankruptcy Code in requiring that debtors go through the plan modification process in order to pay their chapter 13 plans off early without paying allowed creditor claims in full. Indeed, it is ironic that Mr. Schiffman relies so heavily on the Ninth Circuit's decision in *In re Anderson* to support his assault on the provisions of Paragraph 1. In *Anderson,* the Ninth Circuit held that the trustee could not require the debtors to sign a covenant that would cut off their rights to object to plan modifications imposed by the trustee without complying with the procedural requirements of Section 1329 and without obtaining a court order. *In re Anderson,* 21 F.3d at 358. Yet, Mr. Schiffman wants the right to truncate his chapter 13 plan without notice to the trustee or concerned creditors and without otherwise complying with the plan modification provisions of Section 1329.

Plan modification requires that notice and an opportunity to be heard be provided to the chapter 13 trustee and all concerned creditors. Fed.R.Bankr.P. 3015(g). The plan modification process also allows for the court to consider the debtor's good faith in proposing early payoff modifications, as well as issues as to the debtor's overall financial circumstances, future earnings and income, and the elimination of future risks of nonperformance. *In re Sunahara,* 326 B.R. at 781–82. What it does not allow is for the debtor to pay off a chapter 13 plan in a lump sum and present the trustee and creditors with the payoff as fait accompli, with no notice or opportunity for hearing.[9]

Paragraphs 14 and 17 proposed by Mr. Schiffman in the Amended Plan would subvert the procedures the court has adopted consistent with provisions of the Bankrupt-

---

8. Nothing prevents a debtor from proposing a plan modification, even if the term proposed to be modified is a "form" provision of the Chapter 13 Plan Form. As stated by the Panel majority in *Sunahara:*

> Nothing in § 1329 prohibits a debtor from seeking the modification of *any* plan term affecting the amount of payments on claims, *the time for making such payments,* or the amount of distributions to creditors. That the term to be modified involves a form provision in a court-mandated model

plan should be of no consequence. *In re Sunahara,* 326 B.R. at 771 n. 4. [Italics in original.]

9. Is it really "better" and more consistent with the provisions of the Bankruptcy Code to have the issue of an early plan payoff resolved by "the proverbial race to the courthouse" between the debtor and the chapter 13 trustee and/or interested creditors, as recently determined by the bankruptcy court in *In re Drew,* 325 B.R. 765, 774 (Bankr.N.D.Ill.2005)?

cy Code and the FRBPs for implementation of chapter 13, considering the interests of all parties concerned in chapter 13 proceedings, including but not exclusively, the debtor. For the foregoing reasons, I will overrule Mr. Schiffman's Objection to provisions of Paragraph 1 of the Chapter 13 Plan Form, and I have sustained the chapter 13 trustee's and Mr. Thomas' objections to Paragraph 14, and Mr. Thomas' objection to Paragraph 17, in which the trustee joined, of the Amended Plan. I will require that Paragraphs 14 and 17 of the Amended Plan be stricken before I will confirm a chapter 13 plan in this case. Since those provisions have been eliminated in Mr. Schiffman's Second Amended Plan, the court's concerns in that regard have been addressed. A separate Order consistent with this Memorandum Opinion will be entered.