**In re Clinton FRIDLEY and Shannon, Debtors.**

**Clinton Fridley; Shannon Fridley, Appellants,**

v.

**Karla Forsythe, Chapter 13 Trustee, Appellee.**

**BAP No. 07–1276–KMoJ.**

**Bankruptcy No. 06–40424–PBS.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Nov. 30, 2007.

Filed Dec. 18, 2007.

Darren C. Walker, Vancouver, WA, for Clinton and Shannon Fridley.

Gerald R. Pederson, Vancouver, WA, for Karla Forsythe, Ch. 13 Trustee.

Before: KLEIN, MONTALI and JURY, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

This appeal from denial of a motion for entry of discharge presents the problem of whether and how a debtor may prepay a chapter 13 plan and obtain an early discharge. The precise question is whether the phrases "completion by the debtor of all payments under the plan" and "completion of payments under [the] plan" in 11 U.S.C. §§ 1328(a) and 1329(a) include an implied temporal requirement that the plan remain in effect for its designated duration unless the plan is formally modified.

Our answer prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") was that early completion of a chapter 13 plan by paying a lump sum without full payment of allowed claims required a § 1329(a)(2) plan modification to reduce the time for payments. *Sunahara v. Burchard (In re Sunahara)*, 326 B.R. 768, 781–82 (9th Cir. BAP 2005). We now adhere to our *Sunahara* precedent in cases subject to BAPC-

PA. Hence, we AFFIRM the order refusing to enter an early discharge without a § 1329(a)(2) plan modification.

## FACTS

Debtors Clinton and Shannon Fridley filed a joint chapter 13 case and plan on March 14, 2006, in the Western District of Washington. Appellee Karla Forsythe is the chapter 13 trustee.

The debtors scheduled monthly income of $2,479, or $29,748 per year. As this was below Washington's median family income, the § 1325(b)(4) "applicable commitment period" was three years.

The plan confirmed in June 2006 provided for payments of $125 per month and, in paragraph 3.E.2, that the debtors would pay their projected disposable income of $0 for no less than the applicable commitment period of thirty-six months. Allowed unsecured claims were $48,049.38.

The order confirming the plan required the debtors to report changed circumstances and receipt of additional income and to submit copies of their annual tax returns to the trustee.

The 2006 tax return supplied to the trustee in 2007 revealed actual gross income for 2006 of $43,076, which was 45 percent more than projected when the plan was confirmed. The debtors did not otherwise report changed circumstances or income.

In May 2007, during plan month fourteen, the debtors paid the trustee $2,900. This prepayment brought the total paid to slightly more than the $4,500 required by the 36–month plan.[1]

---

1. While the record does not establish whether the trustee communicated an intent to seek a plan modification before the payment was made, the court actually ruled that it was not too late for the trustee to make such a motion.

The trustee advised during oral argument of this appeal that a plan modification motion has been deferred pending outcome of this appeal.

The debtors filed a motion for entry of discharge pursuant to § 1328(a), supported by their declaration that they had completed all payments required by the plan and that they are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.

The trustee opposed the motion, contending that the debtors had not completed all payments under their plan and indicating an intention to seek a plan modification.

The court denied the motion, ruling that all payments required under the plan were not "complete" and that it was not too late for the trustee to move for a plan modification. It also ruled that the debtors' plan, as well as § 1325(b)(4)(B), required a plan modification in order to shorten the applicable commitment period, unless unsecured creditors were paid in full. Moreover, the court ruled that the proposed early payoff was not in good faith because the debtors can afford to pay more to their creditors in light of their material increase in income.

This timely appeal ensued.

## JURISDICTION

 The bankruptcy court had jurisdiction via 28 U.S.C. § 1334. We have jurisdiction under 28 U.S.C. § 158(a)(1) because we deem the order on appeal, which operates as a deferral but not a denial of discharge,[2] to be final under applicable principles of flexible, or pragmatic, finality. *Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1038–39 (9th Cir.2000). A resolution in favor of appellants would be a definitive resolution of a concrete question of law that would end the case. To the extent the order may

be interlocutory, we grant leave to appeal. 28 U.S.C. § 158(a)(3).

## ISSUE

Whether, in the absence of a § 1329 modification, a chapter 13 plan may be "completed" early so as to qualify for discharge by prepaying a lump sum without full payment of allowed claims.

## STANDARD OF REVIEW

 We review issues of statutory construction of the Bankruptcy Code de novo. *Einstein/Noah Bagel Corp. v. Smith (In re BCE W., L.P.)*, 319 F.3d 1166, 1170 (9th Cir.2003); *Mendez v. Salven (In re Mendez)*, 367 B.R. 109, 113 (9th Cir. BAP 2007).

## DISCUSSION

The appellants can prevail only if the statute and the precise plan terms permit early plan completion by prepayment.

## I

 The narrow statutory question is whether the phrases "completion by the debtor of all payments under the plan" and "completion of payments under [the] plan" in §§ 1328(a) and 1329(a) include an implied temporal requirement that the chapter 13 plan remain in effect for the "applicable commitment period," as specified in the plan. This question transcends BAPC-PA because neither statutory phrase was amended in 2005.

Under § 1328(a), a discharge of all debts provided for by the plan is to be entered "as soon as practicable *after completion* by the debtor of all payments under the plan." 11 U.S.C. § 1328(a) (emphasis added).

**2.** Orders denying discharge are final. *Weiner v. Perry, Settles & Lawson, Inc.*, 161 F.3d 1216, 1217 (9th Cir.1998) (by implication).

Under § 1329(a), a plan may be modified on motion of a debtor, trustee, or holder of an allowed unsecured claim "at any time after confirmation of the plan but *before the completion* of payments under such plan." 11 U.S.C. § 1329(a) (emphasis added). The procedure for a modification under Federal Rule of Bankruptcy Procedure 3015(g) requires a motion noticed to all creditors. Fed. R. Bankr.P. 3015(g).[3]

The interplay of §§ 1328(a) and 1329(a) invites a race whenever a debtor's income increases during the performance of a plan. The debtor tries to reach § 1328(a) payment completion before a trustee or creditor forces a § 1329(a)(1) increase in plan payments by way of motion made between plan confirmation and completion of payments. The debtor's competitors are handicapped by the need to comply with the Rule 3015(g) motion process.

The stakes in the race are primarily a discharge of unsecured debt. By seeking the discharge, the debtor is volunteering to trade away the protection of the automatic stay, which expires upon entry of discharge, and the protection of the requirement that all creditors abide by the plan during its life. 11 U.S.C. §§ 362(c)(2)(C) & 1327(a). A debtor who loses the race thereafter has the choice of either complying with the hostile modification in order

to obtain the discharge or abandoning the quest by dismissing the chapter 13 case. 11 U.S.C. § 1307(b).

The interpretative problem amounts to establishing the rules for the race. The debtor would get to run a shorter route if prepayment amounted to a ticket to bypass the matrix of the noticed plan modification motion process through which all other competitors must run. If everyone must run the same route and there actually is competition, then competing motions would come before the court at the same time.

## II

From the standpoint of the structure of the Bankruptcy Code, our answer to the question whether "completion" connotes a temporal requirement is largely dictated by long-established precedent that continues to apply after the enactment of BAPCPA.

## A

The law of the circuit is that the focus in § 1325(b) on "projected disposable income" means that a debtor cannot, as a condition of initial chapter 13 plan confirmation, be forced to agree to increase payments if actual income increases during performance of the plan. *Anderson v.*

---

**3.** Rule 3015(g) provides:

(g) Modification of Plan After Confirmation. A request to modify a plan pursuant to § 1229 or § 1329 of the Code shall identify the proponent and shall be filed together with the proposed modification. The clerk, or some other person as the court may direct, shall give the debtor, the trustee, and all creditors not less than 20 days notice by mail of the time fixed for filing objections and, if an objection is filed, the hearing to consider the proposed modification, unless the court orders otherwise with respect to creditors who are not affected by the proposed modification. A copy of the notice shall be transmitted to the United

States trustee. A copy of the proposed modification, or a summary thereof, shall be included with the notice. If required by the court, the proponent shall furnish a sufficient number of copies of the proposed modification, or a summary thereof, to enable the clerk to include a copy with each notice. Any objection to the proposed modification shall be filed and served on the debtor, the trustee, and any other entity designated by the court, and shall be transmitted to the United States trustee. An objection to a proposed modification is governed by Rule 9014.

Fed. R. Bankr.P. 3015(g).

*Satterlee (In re Anderson)*, 21 F.3d 355, 357–58 (9th Cir.1994). Subsequent increases in actual income can be captured for creditors by way of a § 1329 plan modification, which motion the debtors are entitled to oppose. *Id.* at 358.

When presented with the question of prepayment and early termination of a plan by a debtor who was refinancing a residence but not paying allowed unsecured claims in full, we reasoned that the pre-BAPCPA version of § 1325(b)(1) ("three-year period" instead of "applicable commitment period") is temporal in nature and held that the debtor was required to obtain a § 1329 plan modification. *Sunahara*, 326 B.R. at 781–82. This, of course, means that payments have not been "completed" and necessitates compliance with the procedure imposed by Rule 3015(g). Fed. R. Bankr.P. 3015(g).

Taking a position on a contentious issue, we also ruled in *Sunahara* that § 1325(b) does not apply to § 1329 plan modifications and that protection from overreaching lies in the § 1325(a)(3) requirement, as incorporated by § 1329, that plan modifications be proposed in good faith. *Id.* Although there was merit to both sides of that debate, interests of functional administration of chapter 13 cases within the circuit required that we take a position one way or the other—and we did.

To be sure, our reliance in *Sunahara* on the § 1325(a)(3) good faith standard is vulnerable to criticism that it introduces a level of subjectivity that could yield disparate results. *See In re Keller*, 329 B.R. 697, 702–03 (Bankr.E.D.Cal.2005).

That subjectivity, however, is constrained by settled law of the circuit that good faith is to be assessed through the matrix of whether the plan proponent "acted equitably" taking into account "all militating factors" in a manner that equates with the "totality" of circumstances. *Goeb*

*v. Heid (In re Goeb)*, 675 F.2d 1386, 1390–91 (9th Cir.1982); *Nelson v. Meyer (In re Nelson)*, 343 B.R. 671, 677 (9th Cir. BAP2006); *cf. Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070, 1075 (9th Cir.2002) (§ 1129(a)(3) decision citing *Goeb* as "our long settled interpretation of the good faith [confirmation] requirement"). That test dampens the risk of dysfunctionally divergent results that cannot be regulated by appellate review.

The existence of the controlling *Goeb* test of § 1325(a)(3) good faith means that *Sunahara* did not inadvertently license circumvention of § 1325(b) by the ploy of confirming a plan that complies with § 1325(b) and then promptly modifying the plan in a manner that does not comply with § 1325(b). Such a stratagem plainly would be an unfair manipulation of the Bankruptcy Code, which is a factor named in *Goeb* as indicative of a plan proponent not acting equitably and, hence, not in good faith. *Goeb*, 675 F.2d at 1390.

B

The enactment of BAPCPA in 2005 did not undermine the rules in *Anderson*, *Goeb*, and *Sunahara*.

There is much that BAPCPA did not change. Neither of the "completion" of plan payments provisions in §§ 1328(a) and 1329(a) were amended. Nor was there any change to § 1329(a)(2), which provides for using a plan modification to reduce or extend the time for payments. Good faith under § 1325(a)(3) remained an essential element for plan confirmation and, by incorporation through § 1329(b)(1), for plan modification.

In § 1325(b)(1), the term "applicable commitment period" was substituted by BAPCPA in lieu of "three-year period" so that a plan cannot be confirmed over ob-

jection by the trustee or a holder of an allowed unsecured claim unless all projected disposable income to be received during that period will be applied to payments to unsecured creditors.[4]

Before BAPCPA, the § 1325(b)(1) "three-year period" operated as a temporal requirement. *Keller,* 329 B.R. at 700; *accord, In re Slusher,* 359 B.R. 290, 302–03 (Bankr.D.Nev.2007).

■ After BAPCPA, the § 1325(b)(1) "applicable commitment period" continues to operate as a temporal requirement. Nothing in the statutory structure suggests that Congress meant to alter this aspect of the statute. In effect, the "applicable commitment period" is a device to force certain debtors to have chapter 13 plans that are longer than three years. Thus, we agree with the analysis articulated in *Slusher* concluding that the "applicable commitment period" is temporal. *Slusher,* 359 B.R. at 300–05; *accord, In re Casey,* 356 B.R. 519, 527 (Bankr. E.D.Wash.2006).

Congress also required in BAPCPA that chapter 13 debtors provide postpetition tax returns, upon request, together with an annual statement that includes the amount and sources of income. 11 U.S.C. §§ 521(f)-(g). The obvious purpose of this self-reporting obligation is to provide information needed by a trustee or holder of an allowed unsecured claim in order to decide whether to propose hostile § 1329 plan modifications.

This power of the trustee and of creditors holding allowed unsecured claims to request that a confirmed plan be modified by increasing payments in order to capture material increases in net income that occur during the life of the plan is an important feature of chapter 13. *See* 11 U.S.C. § 1329(a)(1). The addition in 2005 of postpetition reporting requirements at §§ 521(f) and (g) operates to bolster the efficacy of § 1329 modifications.

■ Thus, part of the statutory bargain inherent in chapter 13 is that the debtors must, for the prescribed life of the plan, run the gauntlet of exposure to trustee or creditor requests to increase payments. BAPCPA, by creating a debtor's duty to make information available to those who could propose modifications, actually reinforced this aspect of the statutory bargain.

A debtor desiring to prepay a chapter 13 plan and obtain an early discharge without paying allowed unsecured claims in full must follow the § 1329 modification procedure prescribed by Rule 3015(g). In exchange for a § 1328(a) discharge of more debts than can be discharged in chapter 7,[5] the debtor's increases in income are exposed to the risk of being captured by way of § 1329 modifications proposed by the trustee or an unsecured creditor. The debtor cannot short-circuit that exposure merely by prepayment, but rather must obtain a § 1329 plan modification after having given the notice required by Rule 3015(g).

4. Section 1325(b)(1)(B) provides:

 If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—. . . (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
 11 U.S.C. § 1325(b)(1)(B).

5. Although § 1328(a)'s so-called chapter 13 "superdischarge" was eroded by BAPCPA, there are still at least eleven categories of debt that are dischargeable in chapter 13 but not in chapter 7: 11 U.S.C. §§ 523(a)(6) (in part), (7), (10), (11), (12), (14B), and (15)-(19). *See Slusher,* 359 B.R. at 304 n. 25.

Hence, the court's ruling on the underlying question of law was correct.

## III

■ A focus on the specific terms of the debtors' plan reveals an adequate, independent basis to affirm.

The plan requires that the debtors either pay 100 percent to unsecured claimants, or pay their projected disposable income (calculated to be zero) for no less than the applicable commitment period of thirty-six months,[6] under § 1325(b).

Because the debtors did not plan to pay 100 percent to unsecured claimants, they expressly committed themselves to make monthly payments for the entire applicable commitment period of no fewer than thirty-six months.

The pertinent plan language comported with the requirement of § 1325(b)(4) that the "applicable commitment period" be three or five years, from which the statute permits deviation "only if the plan provides for payment in full of all allowed unsecured claims over a shorter period." 11 U.S.C. § 1325(b)(4). The debtors committed themselves to three years of payments.

Here, the debtors attempted to complete all payments under the plan by a lump-sum payment made at plan month fourteen. However, both the debtors' plan and the specific language of the Code require that the "applicable commitment period"

not be less than thirty-six months unless the plan provides for payment on allowed unsecured claims in full. Since the debtors' plan would not pay all allowed unsecured claims in full and since they committed themselves to thirty-six months, their prepayment does not "complete" their plan for purposes of §§ 1328(a) or 1329.

If a plan calling for payment in the fourteenth month of a lump sum insufficient to pay allowed unsecured claims in full had been proposed at the outset, it could not have been confirmed over the trustee's objection and hence cannot be ratcheted into effectiveness without a formal plan modification. The result conceivably could be achieved through a plan modification in light of our holding in *Sunahara* that § 1325(b) does not apply to § 1329 modifications, but only after the trustee and all creditors have the opportunity to oppose modification that is afforded by the modification procedure prescribed by Rule 3015(g). *Sunahara,* 326 B.R. at 781–82.[7]

In this instance, the debtors did not seek to modify their plan, but instead proposed to circumvent the modification process through an early lump-sum payment. Construing the plan that it had confirmed, the court determined that because paragraph 3.E.2 of the plan required either thirty-six months of payments or a 100 percent payment to holders of allowed

---

6. Paragraph 3.E.2 of the debtors' plan:
 Other Unsecured Claims. The Debtor(s) will pay 100% to claimants in this class, or pay projected disposable income for no less than the Applicable Commitment Period of either 36 or 60 months as stated below **(choose a. or b., but not both):** . . . .
 (b). Pursuant to 11 [U.S.C.] § 1325(b), debtor(s) projected disposable income during the applicable commitment period of no fewer than *36* months totals *$0* . . . .
 Amended Chapter 13 Plan, ¶ 3.E.2 (bold in original).

7. As the bankruptcy court noted in *Keller:*
 Of course, creditors may prefer to be paid sooner rather than later. If the debtor initially proposes to fund a plan with an exempt asset, a gift, or the proceeds from a sale or refinance of property, creditors may jump at the chance to trade the right to receive three years of disposable income for a quicker lump sum payment.
 *Keller,* 329 B.R. at 701.

unsecured claims, the debtors could not unilaterally "short circuit" that provision of their plan absent a modification. This was not error.

Thus, the court correctly denied the debtors' motion to enter discharge under § 1328(a) because they had neither made payments for thirty-six months nor paid allowed unsecured claims in full, as required by the terms of their confirmed plan and as required by the explicit language of §§ 1325(b)(4)(A) and (B).[8]

## CONCLUSION

The debtors were not entitled to entry of discharge because there had not yet been "completion by the debtor[s] of all payments under the plan" within the meaning of § 1328(a). The "applicable commitment period" in § 1325(b) is a temporal requirement of thirty-six months in this case, rather than a multiplicand of monthly payments. Hence, the statutory concept of "completion" of payments includes the completion of the requisite period of time. Moreover, the terms of the debtors' plan actually required payments for thirty-six months. AFFIRMED.

---

**8.** We are presented with no question whether, and express no view whether, other preconditions to discharge were satisfied. *E.g.,* 11 U.S.C. § 1328(a) (domestic support obligations); *id.* § 1328(g) (financial management education); *id.* § 1328(h) (regarding § 522(q)).