FILED

APR 17 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.  NC-19-1197-FBTa |
| STEPHEN WILLIAM BERKLEY, | Bk. No.    14-30941 |
| Debtor. | |
| STEPHEN WILLIAM BERKLEY, | |
| Appellant, | |
| v. | **OPINION** |
| DAVID BURCHARD, Chapter 13 Trustee, | |
| Appellee. | |

Argued and Submitted on March 26, 2020

Filed – April 17, 2020

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Dennis Montali, Bankruptcy Judge, Presiding

Appearances:     Thomas P. Kelly III argued on behalf of appellant;

Brisa C. Ramirez on the brief for appellee.

_____

Before: FARIS, BRAND, and TAYLOR, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

## INTRODUCTION

As chapter 13[1] debtor Stephen William Berkley neared the successful completion of his chapter 13 plan, he received an unexpected windfall: stock options he had earned for postconfirmation services became worth about $3.8 million. His chapter 13 trustee, appellee David Burchard ("Trustee"), thought that Mr. Berkley should use about $202,000 of his windfall to pay his creditors in full. The bankruptcy court agreed and modified the plan accordingly.

On appeal, Mr. Berkley argues that the court could not force him to commit any of the stock proceeds to the plan because the estate terminated at confirmation and the proceeds were not property of the estate.

The bankruptcy court was correct, so we AFFIRM. We publish to clarify that a revesting provision in a confirmed chapter 13 plan does not prevent modification of the plan to capture increases in the debtor's postconfirmation compensation.

_____

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

## FACTUAL BACKGROUND

### A.    Mr. Berkley's chapter 13 petition and plan

Mr. Berkley commenced his chapter 13 case in June 2014. His proposed second amended plan ("the Plan") provided that he would pay $1,233.02 per month for sixty months. The nonpriority unsecured creditors would receive one percent of their allowed claims. The Plan provided that "[p]roperty of the estate will revest in Debtor upon confirmation."

The bankruptcy court confirmed the Plan in April 2015. Mr. Berkley faithfully made his monthly payments for over four years.

### B.    The Trustee's motion to modify the Plan

When Mr. Berkley filed his petition, he was a self-employed software developer earning $5,000 per month. In 2016, after the court confirmed the Plan, Mr. Berkley was hired as CEO of Antares Audio Technologies ("Antares"). In 2018, he began receiving stock options from Antares as part of his compensation package. In late 2018 or early 2019, Antares received a buyout offer, under which Mr. Berkley would receive about $3.8 million for his stock.

In March 2019, the fifty-seventh month of the Plan, Mr. Berkley disclosed to the Trustee the pending sale and the potential receipt of $3.8 million. However, he asserted that the money was not property of the bankruptcy estate, so the Trustee could not force him to devote it to his creditors.

The Trustee disagreed. He asserted that, under § 1329(a), "Mr. Berkley's post-petition acquired stock and increased income are changed circumstances" warranting modification of the Plan.

The Trustee filed a motion to modify the Plan ("Motion to Modify"). He argued that Mr. Berkley's receipt of $3.8 million from the stock sale necessitated an increase in payments to general unsecured creditors. He proposed that Mr. Berkley make a lump-sum payment of $202,603.80 before the end of the plan term so that unsecured creditors would receive 100% payment on their allowed claims.

Mr. Berkley opposed the Motion to Modify and argued that, because all estate property revested in him upon confirmation, the Trustee could not require him to increase his Plan payments due to his receipt of the stock proceeds.

In a supplemental brief, Mr. Berkley added the argument that the Motion to Modify was untimely because it sought past income (that he began accumulating between 2017 and 2018, when the stock options were issued), not "future income" under § 1322(a).

The bankruptcy court agreed with the Trustee. The court observed that Mr. Berkley's argument would effectively nullify §§ 1306 and 1329: "You're trying to say we can ignore 1306 and . . . if a Plan gets confirmed with revesting, you can't file a modification – ever – and 1329 is meaningless, and that's just not the law." The court further noted that, if

Mr. Berkley did not want to contribute the extra $202,000 to the Plan, then he was free to dismiss his case.

The bankruptcy court issued an order granting the Motion to Modify. Mr. Berkley timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (L). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion in granting the Motion to Modify.

## STANDARDS OF REVIEW

"The confirmation of a modified plan is reviewed for an abuse of discretion." *Profit v. Savage (In re Profit)*, 283 B.R. 567, 572 (9th Cir. BAP 2002) (citing *Max Recovery, Inc. v. Than (In re Than)*, 215 B.R. 430, 433 (9th Cir. BAP 1997)). To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009) (en banc).

5

We review de novo the bankruptcy court's interpretation of the applicable Code provisions. *Dernham-Burk v. Mrdutt (In re Mrdutt)*, 600 B.R. 72, 76 (9th Cir. BAP 2019) (citing *Mattson v. Howe (In re Mattson)*, 468 B.R. 361, 367 (9th Cir. BAP 2012)). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

## DISCUSSION

**A.    The bankruptcy court did not abuse its discretion in modifying the Plan to increase Mr. Berkley's plan payments.**

The bankruptcy court granted the Motion to Modify to take into account Mr. Berkley's unexpected receipt of $3.8 million from the sale of stock that he obtained as part of his postconfirmation compensation package. It correctly held that § 1329 allows the Trustee to modify a confirmed plan to increase payments to unsecured creditors in these circumstances.

Section 1329(a) provides that, "[a]t any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified" to "increase or reduce the amount of payments on claims of a particular class provided for by the plan[.]" § 1329(a).

Section 1329 specifies the ways in which confirmed chapter 13 plans may be modified, but it does not state the circumstances in which a

6

modification is proper. We have repeatedly held that "the bankruptcy court may consider a change in circumstances in the exercise of its discretion." *In re Mattson*, 468 B.R. at 369 (citing *Powers v. Savage (In re Powers)*, 202 B.R. 618, 623 (9th Cir. BAP 1996)). An unexpected increase in income is one such change that could warrant a plan modification to increase payments. *See Fridley v. Forsythe (In re Fridley)*, 380 B.R. 538, 543 (9th Cir. BAP 2007) ("Subsequent increases in actual income can be captured for creditors by way of a § 1329 plan modification, which motion the debtors are entitled to oppose." (citing *Anderson v. Satterlee (In re Anderson)*, 21 F.3d 355, 358 (9th Cir. 1994))); *In re Powers*, 202 B.R. at 623 (affirming the bankruptcy court's modification of plan to take into account the debtor's nearly fifty percent salary increase).

The Ninth Circuit has held that creditors can seek increased payments from debtors whose income increases during the term of the plan. In *Danielson v. Flores (In re Flores)*, 735 F.3d 855 (9th Cir. 2013) (en banc), the Ninth Circuit considered whether above-median income debtors with no projected disposable income could confirm a plan for only thirty-six months. In holding that the debtors must commit to a plan for the full sixty months in the event their income increases, the court expressed concern for creditors' ability to modify the plan to receive greater recovery in the event of a change in the debtor's circumstances:

A minimum duration for Chapter 13 plans is crucial to an important purpose of § 1329's modification process: to ensure that unsecured creditors have a mechanism for seeking increased (that is, non-zero) payments if a debtor's financial circumstances improve unexpectedly. . . . **[U]nsecured creditors may request a later modification of the plan to increase the debtor's payments if the debtor acquires disposable income during the pendency of the applicable commitment period.**

735 F.3d at 860 (emphasis added). The Court of Appeals further explained the policy rationale behind its ruling:

The policy justification for looking to future earnings is that a failure to do so "would deny creditors payments that the debtor could easily make." **In other words, the statute is meant to allow creditors to receive increased payments from debtors whose earnings happen to increase. . . .** Congress intended § 1325(b)(1)(B) to ensure a plan duration that gives meaning to **§ 1329's modification procedure as a mechanism for** *post*-**confirmation adjustments for unforeseen increases in a debtor's income**.

*Id.* at 861-62 (citations omitted) (bolded emphasis added).

Similarly, the bankruptcy court's decision comports with *In re Escarcega*, 573 B.R. 219 (9th Cir. BAP 2017). In that case, we rejected a chapter 13 plan with an indefinite duration, which would have allowed the debtor to "complete" his plan whenever he paid off all priority and secured claims. We stated that "payments under a plan have to continue for the duration provided for in the initial plan, absent modification, before being

considered 'complete' for purposes of modification and discharge." 573 B.R. at 239 (citing *In re Fridley*, 380 B.R. at 543-44). Our reasoning is instructive: unless the debtor successfully modifies the plan to shorten its duration, the debtor is exposed to the possibility of continuing to commit his income and property to plan payments, even in excess of the original amount provided for under the plan. *See id.* at 240 ("The possibility of capturing increases in income necessitates that the chapter 13 trustee or unsecured creditors are apprised of the term of the plan so that they can seek modification if the Debtor's income increases."); *In re Fridley*, 380 B.R. at 544 ("In exchange for a § 1328(a) discharge of more debts than can be discharged in chapter 7, the debtor's increases in income are exposed to the risk of being captured by way of § 1329 modifications proposed by the trustee or an unsecured creditor." (footnote omitted)).

Further, the bankruptcy court's decision is consistent with the Bankruptcy Abuse Prevention & Consumer Protection Act of 2005's primary goal of helping "ensure that debtors who **can** pay creditors **do** pay them." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 64 (2011).

In other words, confirmation does not shield increases in the debtor's postconfirmation income from the reach of the chapter 13 trustee or creditors. It is well accepted that § 1329 permits the trustee and creditors to modify the plan to capture postconfirmation increases in the debtor's income. As such, the bankruptcy court did not abuse its discretion in granting the Motion to Modify.

**B.      Mr. Berkley's arguments concerning revesting and the termination of the estate are unavailing.**

Mr. Berkley argues that his creditors were not entitled to any portion of his $3.8 million windfall because that money was not property of his estate after plan confirmation. His conclusion does not follow from his premise.

Mr. Berkley's premise is that the $3.8 million was not property of the estate. He argues that, under binding Ninth Circuit precedent, "the bankruptcy estate in this case ceased to exist upon plan confirmation with the exception of any property the plan or confirmation order clearly reserved for the bankruptcy estate." Because the estate terminated, the Trustee could only exercise control over his income "as is necessary for the execution of the Plan." In other words, after confirmation, the Trustee had no right to any income above the $1,233.02 monthly payments specified by the Plan.

Mr. Berkley is correct that we have adopted the so-called "estate termination approach," which recognizes "the vesting of all estate property in the debtor at confirmation (unless the plan or confirmation order provides otherwise) and the concomitant termination of estate property . . . ." *Cal. Franchise Tax Bd. v. Jones (In re Jones)*, 420 B.R. 506, 515 (9th Cir. BAP 2009), *aff'd on other grounds*, 657 F.3d 921 (9th Cir. 2011). The Ninth Circuit affirmed our decision, declining to adopt a particular

10

approach but holding that, under § 1327(b), "property of the estate revests in the debtor upon plan confirmation, unless the debtor elects otherwise in the plan. Because [the debtor] did not elect otherwise, she once again became the owner of her property at confirmation, except as to those sums specifically dedicated to fulfillment of the plan." 657 F.3d at 928.

Most recently, in *Black v. Leavitt (In re Black)*, 609 B.R. 518 (9th Cir. BAP 2019), we reaffirmed our view that the estate terminates at confirmation. We stated that "the revesting provision of the confirmed plan means that the debtor owns the property outright and that the debtor is entitled to any postpetition appreciation." 609 B.R. at 529 (citing *In re Jones*, 420 B.R. at 515).

We acknowledge that the bankruptcy court in this case, and some other bankruptcy courts within our circuit, take the view that postconfirmation windfalls become property of the estate upon receipt, even if the plan provides for revesting. *See, e.g.*, *In re Shay*, 553 B.R. 412, 418 (Bankr. W.D. Wash. 2016) (holding that "[a] plan provision that automatically vests post-petition property with the debtor without ever becoming property of the estate, as proposed by the debtors in their amended plan, is inconsistent with the Code"); *In re Jackson*, 403 B.R. 95, 100 (Bankr. D. Idaho 2009) (rejecting the estate termination approach and holding that an inheritance received postconfirmation was property of the estate).

In our view, these decisions reach the right result for an incorrect reason. Mr. Berkley's arguments, and the cases cited above, all rest on the unstated assumption that, unless the postconfirmation income is property of the estate, the debtor cannot be compelled to devote it to his plan. This assumption is incorrect. Nothing in the Code provides that plan payments may only be funded by estate property. In fact, debtors are often compelled (in order to formulate a confirmable plan) to fund the plan from non-estate sources (family contributions, loans or withdrawals from pension plans, sale of exempt assets, etc.). *See, e.g., In re Deutsch*, 529 B.R. 308, 312 (Bankr. C.D. Cal. 2015) ("Reliance on contributions from family is disfavored, but not prohibited." (citation omitted)); *In re Feiling*, Case No. 11-71474 MEH, 2013 WL 2451333, at *5 (Bankr. N.D. Cal. June 6, 2013) (confirming plan funded by gifts and non-estate property). Under § 1329, the bankruptcy court can approve a plan modification that increases the debtor's plan payments due to a postconfirmation increase in the debtor's income, whether or not the additional income is property of the estate.

This result is consistent with our precedent. *Jones* was concerned with whether a creditor could maintain a postconfirmation tax claim if the **prepetition** property of the estate revested in the debtor at confirmation. In *Black*, we held that, where the confirmed plan provided that the debtor would pay a specified amount when the debtor sold or refinanced a particular piece of **prepetition** property, the debtor could not be forced to

12

pay more when he sold the property for a greater amount.[2] The revesting provision was the key to those cases because they both dealt with property that the debtor owned on the petition date. This case, however, is solely concerned with **postconfirmation** wages.[3] Because the stock options were postconfirmation income that Mr. Berkley earned as part of his compensation package, the bankruptcy court properly committed their proceeds to the Plan. *See In re Fridley*, 380 B.R. at 543.

Also, as the bankruptcy court correctly observed, Mr. Berkley's argument would effectively nullify § 1329. Under Mr. Berkley's theory, once the property revests in the debtor at confirmation, the trustee would never be able to modify the plan to increase plan payments due to a postconfirmation increase in the debtor's income. As discussed above, the Ninth Circuit recognizes that the trustee and creditors may modify a plan to increase plan payments based on a debtor's unexpected postconfirmation increase in income.

Mr. Berkley also argues that the $3.8 million represents past earnings

---

[2] Additionally, in *Black*, the debtor agreed to commit to the plan a specific dollar amount from the sale of prepetition property. 609 B.R. at 521. Here, the Plan contained no such limitation.

[3] Mr. Berkley takes the position on appeal that the stock options were not wages or compensation. This is the exact opposite of the position he took in the bankruptcy court: Mr. Berkley repeatedly represented to the Trustee and the bankruptcy court that the stock options were "income" and that "[a]s part of his compensation package, in 2018 he began receiving stock options in the company . . . ." We reject his attempt to reverse ground on appeal.

and future appreciation. He contends that he had already earned the stock before the Trustee's Motion to Modify, so it could not be "future income" under § 1322(a).[4] We disagree. Under Mr. Berkley's logic, the Trustee would never be entitled to capture stock, a cash or non-cash bonus, or other lump-sum postconfirmation payment unless the trustee somehow learned about the money in time to file a plan modification before the debtor received it. As a practical matter, chapter 13 trustees are highly unlikely to learn of such developments unless the debtor discloses them. Thus, if Mr. Berkley were correct, the rights of the trustee and creditors would depend entirely on the debtor's promptness in notifying them prospectively of a change in circumstances. We reject this unsound policy.

Similarly, Mr. Berkley's argument implies that the Trustee should have acted sooner to take control of the stock options as Mr. Berkley earned them, and, by not acting until the options had ascertainable value, the Trustee waited too long. Neither the Code nor sound policy compels trustees to expend resources on assets that may or may not ever have any value.

Therefore, we reject Mr. Berkley's argument that the revesting provision bars the plan modification.

---

[4] Section 1322(a)(1) provides that the chapter 13 plan "shall provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan[.]" § 1322(a)(1).

**CONCLUSION**

The bankruptcy court did not abuse its discretion in granting the Motion to Modify. We AFFIRM.