FILED

SEP 06 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| In re: | ) | BAP Nos. | NC-16-1333-JuFB |
|---|---|---|---|
| | ) | | NC-16-1334-JuFB |
| DENNIS MICHAEL ESCARCEGA; | ) | | NC-16-1335-JuFB |
| NANETTE MARIE SISK, dba About | ) | | NC-16-1336-JuFB |
| Face Skin Care; | ) | | NC-16-1358-JuFB |
| EUGENE EDWARD VICK; | ) | | |
| MARK IRVIN CANDALLA; | ) | Bk. Nos. | 16-50368-SLJ |
| JERI LYLE SALDUA MERCADO, | ) | | 16-50548-SLJ |
| | ) | | 16-50401-MEH |
| Debtors. | ) | | 16-50659-SLJ |
| | ) | | 16-50651-SLJ |

In re:

DENNIS MICHAEL ESCARCEGA;
NANETTE MARIE SISK, dba About
Face Skin Care;
EUGENE EDWARD VICK;
MARK IRVIN CANDALLA;
JERI LYLE SALDUA MERCADO,

           Appellants.

**O P I N I O N**

Argued and Submitted on June 22, 2017
at San Francisco, California

Filed - September 6, 2017

Appeals from the United States Bankruptcy Court
for the Northern District of California

Honorable M. Elaine Hammond, Bankruptcy Judge, Presiding
Honorable Stephen L. Johnson, Bankruptcy Judge, Presiding

_____

Appearances:    James J. Gold of Gold and Hammes argued for appellants Dennis Michael Escarcega, Nanette Marie Sisk, dba About Face Skin Care, and Mark Irwin Candalla; James S.K. Shulman of the Law Offices of James S.K. Shulman argued for appellants Eugene Edward Vick and Jeri Lyle Saldua Mercado; Ben A. Ellison of Cairncross & Hempelmann, P.S. argued for National Association of Consumer Bankruptcy Attorneys, as Amicus Curiae, by special leave of the Panel, supporting the appellants' position.

_____

Before:  JURY, FARIS, and BRAND, Bankruptcy Judges.

JURY, Bankruptcy Judge:

When Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), a primary purpose was to help ensure that debtors who **can** pay creditors **do** pay them the maximum they can afford. Ransom v. FIA Card Servs., N.A., 131 S. Ct. 716, 721 (2011); see also Whaley v. Tennyson (In re Tennyson), 611 F.3d 873, 879 (11th Cir. 2010) ("'The heart of [BAPCPA's] consumer bankruptcy reforms . . . is intended to ensure that debtors repay creditors the maximum they can afford.'"). The Ninth Circuit in Danielson v. Flores (In re Flores), 735 F.3d 855 (9th Cir. 2013), embraced this ideal by ruling that if the provisions of § 1325(b)(1)(B)[1] are triggered by an objection, debtors must commit to a fixed plan term (either 36 or 60 months) because "[a] minimum duration for Chapter 13 plans is crucial to an important purpose of § 1329's modification process:  to ensure that unsecured creditors have a mechanism for seeking increased (that is, non-zero) payments if a debtor's financial circumstances improve unexpectedly." Id. at 860 (citing Fridley v. Forsyth (In re Fridley), 380 B.R. 538, 543 (9th Cir. BAP 2007)).

Notwithstanding this background and purpose, debtors in the

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532 and "Rule" references are to the Federal Rules of Bankruptcy Procedure.  References to various sections of the bankruptcy court's Model Plan are indicated by "section __ of the Model Plan."

-2-

Northern District of California, San Jose Division sought to modify the district's mandatory Model Plan, which required a fixed plan term, so that the plan would be for an indeterminate duration. Such plan therefore could be completed without further modification and debtor discharged as soon as all priority and secured debt was repaid, insuring that the unsecured creditors would never receive any payment on their claims. Not only did the debtors propose such plans, but their chapter 13 trustee devised a mechanism by which she could avoid filing an objection to the proposed plan — an act which would trigger the mandatory imposition of the applicable commitment period under Flores[2] — by providing debtors' attorneys with a "draft objection" which allowed them to make required amendments to the plan outside the court proceeding. The brash purpose of the "draft objection" was to create a work-around of the impact of Flores for the local debtors' bar so that debtors could avoid paying unsecured creditors what they might be entitled to receive.

Two bankruptcy judges sitting in the San Jose Division challenged the propriety of these debtors' attempts to modify the Model Plan and issued a joint decision denying confirmation of such plans. Their well-reasoned ruling found that these plan provisions were inconsistent with the statutory requirements of

[2] The appellee/en banc appellant in Flores was the chapter 13 trustee, seeking to ensure that unsecured creditors would receive payments on their claims if, during a plan's duration, debtors could afford to pay them.

-3-

§§ 1328 and 1329 which, read together, accord a discharge to debtors only if their plans could be modified upon motion by an unsecured creditor when debtors' circumstances changed and they became able to pay a return to such creditors — i.e., a return of more than the zero dollars debtors wanted to ensure they would receive - at some point during the plan's fixed duration. They also held that such plans were not proposed in good faith, because they unfairly manipulated the Bankruptcy Code and were proposed in an inequitable manner.

We AFFIRM the rulings of the bankruptcy court in these cases and in doing so endorse its conclusions that such plans are inconsistent with the statutory requirements of §§ 1328 and 1329. We also agree the such provisions are not proposed in good faith, as a blatant attempt to avoid the consequences of modification under § 1329 which would compel debtors to pay their creditors what they are able to afford during the term of their chapter 13 plans. Moreover, we seriously question the tactics of this chapter 13 trustee who essentially colluded with the debtors' bar to avoid the consequence that filing an objection would have under controlling Ninth Circuit case law. Her role in insuring that unsecured creditors would never receive a dividend in these cases strikes the Panel as inconsistent with the diligence required of such trustees.

## I. FACTS

### A. Debtors and Counsel

Dennis Michael Escarcega (Escarcega), Nanette Marie Sisk (Sisk), Eugene Edward Vick (Vick), Mark Irvin Candalla (Candalla), and Jeri Lyle Saldua Mercado (Mercado)

-4-

(collectively, Debtors), each filed a chapter 13 petition in the San Jose Division of the United States Bankruptcy Court with the assistance of counsel from one of two different law firms — Gold and Hammes (G&H) or the Law Offices of James S.K. Shulman (Shulman) (collectively, Counsel).

Sisk is an above-median income debtor while the others are below-median income debtors. Debtors each proposed zero percent plans to unsecured creditors.[3] Neither the chapter 13 trustee (Trustee) nor any creditor objected to Debtors' plans.

**B. The Model Plan**

Bankruptcy Local Rule (BLR) 1007-1 provides:

> The Court may approve and require the use of pre-printed practice forms. The Court may also approve practice forms which are not pre-printed but the format of which is required to be followed. Practice forms may be adopted on a district-wide or division-wide basis. Required forms will be available in the Clerk's office, on the Court's website (http://www.canb.uscourts.gov) and, with respect to Chapter 13 practice, in the office of the Chapter 13 Trustee or on the Chapter 13 Trustee's website.

Consistent with this rule, beginning February 1, 2016, the San Jose bankruptcy court orally announced that chapter 13 debtors were required to use the Model Plan posted on the court's website.[4]

---

[3] Although the orders denying confirmation vary from debtor to debtor due to their unique circumstances, those differences are not relevant to the issues raised in this appeal. In each order denying confirmation, the bankruptcy court stated that it was denying confirmation of the debtor's plan for the reasons stated in the memorandum decision entered on September 26, 2016. The court then provided additional reasons for denying confirmation with respect to some of the debtors.

[4] In August 2013, the Oakland and San Francisco Divisions
(continued...)

-5-

Under section 5 of the Model Plan, debtors may propose additional provisions that modify the plan:

> [A]s long as consistent with the Bankruptcy Code, the Debtor may propose additional provisions that modify the preprinted text. All additional provisions shall be on a separate piece of paper appended at the end of this plan. Each additional provision shall be identified by a section number beginning with section 5.01 and indicate which section(s) of the standard plan form have been modified or affected.

Debtors used the Model Plan and attached a separate page of additional plan provisions which modified the language in sections 1.01(a) and 2.12 of the Model Plan and others not at issue in this appeal.[5] Counsel developed additional provisions 5.02(a) and 5.03 based on their belief that the Model Plan substantively abridged Debtors' rights without them. Set forth below are the objectionable Model Plan provisions and Counsels' arguments regarding those objections:

**1.    Section 1.01(a) of the Model Plan:**

> **Plan payments.** To complete this plan, Debtor shall:
>
> a.    Pay to Trustee $_____ per month for ____ months from the following sources: (describe, such as wages, rental income, etc.):_____. Debtor shall after ___ months, increase the monthly payment to $____ for _____ months.

---

[4](...continued) implemented the Model Plan. At the same time, the Santa Rosa Division allowed, but did not require, its use.

[5] Counsel also found sections 4.01, 4.04 and 4.05 of the Model Plan objectionable and added corrective language with respect to these sections. In its memorandum decision, the bankruptcy court allowed the additional provisions which modified those sections of the Model Plan and indicated that Counsel could include those modifications in future chapter 13 plans without the need for an evidentiary hearing.

**Objection to section 1.01(a) of the Model Plan:** Counsel interpret subsection (a) to require not only a specific dollar amount for the monthly payments, but also the precise number of months for those payments.[6] They contend that most debtors cannot precisely calculate the exact number of months it will take for the proposed monthly payment to complete the plan due to many factors, including fluctuations in the trustee's fee percentage throughout the term of the plan. They also argue that unless an unsecured creditor objects to the plan under § 1325(b), the term of the plan will be of no concern to the creditor. Zero dollars paid over 48 months or zero dollars over 60 months have the same impact on the creditor. According to Counsel, neither term is more meaningful than the other - zero dollars is still zero dollars.

**Corrective Language:** To correct the perceived problems with section 1.01(a), G&H added additional provision 5.02(a) which provides: "The length of the plan as reflected in the cumulative terms of the monthly payments provided in section 1.01(a) [of the Model Plan] is the estimated length of the plan." (Escarcega, Sisk, and Candalla plans).

Mr. Shulman added: "Notwithstanding [s]ection 1.01(a) [of the Model Plan], once the debtor has paid all allowed secured and priority claims and administrative expenses as provided for in this plan, the plan shall be deemed completed and no further

---

[6] In section 1.01(a) of the Model Plan, Candella proposed a 60 month plan, Escarcega proposed a 50 month plan (although the term of the plan is somewhat ambiguous), Mercado proposed a 36 month plan, Sisk proposed a 60 month plan, and Vick proposed a 59 month plan.

payment to the Trustee shall be required." (Vick and Mercado plans).

**2.    Section 2.12 of the Model Plan**

This section provides:

> **Class 7:  All other unsecured claims**.  These claims, including the unsecured portion of secured recourse claims not entitled to priority, total approximately $_____.  The funds remaining after disbursements have been made to pay all administrative expense claims and other creditors provided for in this plan are to be distributed on a pro-rata basis to class 7 claimants.
>
> **[select one of the following options:]**
>
> ____**Percent Plan**.  Class 7 claimants will receive no less than __% of their allowed claims through this plan.
>
> ____**Pot Plan**.  Class 7 claimants are expected to receive __% of their allowed claims through this plan.

**Objection to section 2.12 of the Model Plan**: Counsel complain that rather than offering the options of:  "will receive ___% of their allowed claims" and "will receive an aggregate dividend of $_____," which would make clear or determinable the precise dividend the creditors will receive, the Model Plan required the debtor to select between two nebulous ideas.  According to Counsel, based on the provided choices, neither the creditors nor the debtor knew how much the dividends will be at the time the case is filed.  Counsel contend that the two provisions to select from, which specify the dividend on general unsecured claims, require the debtor to convert the actual dollar amount intended to be the aggregate dividend into a calculated percentage of the estimate of the general unsecured claims.

Counsel further complain that both provisions allow the

dividend to be increased:  the percent plan provides "no less than ____%" and the pot plan states:  "expected to receive ____%."  According to Counsel, no one should be authorized to make that decision, but at some point the plan must be declared completed, or not.  Counsel argue that the vagueness of this language leaves it open to a trustee to make arbitrary judgments about what the dividend is.  Counsel thus contend that the Model Plan substantively abridges Debtors' rights by requiring them to make payments to general unsecured creditors in excess of the amounts required by the Bankruptcy Code.

**Corrective Language**:  To correct these perceived problems in section 2.12 of the Model Plan, G&H added additional provision 5.03, which states:

> Section 2.12 is modified to add the following, if checked here:
>
> ✓ Class 7 claimants shall receive an aggregate dividend of $0, which amount can be increased up to $1.00 to an amount sufficient for the trustee to administer payments on these claims, which shall be shared pro-rata based on the amounts of their respective allowed nonpriority unsecured claims. (Escarcega, Sisk, Candalla plans).

Mr. Shulman added:

> Section 2.12 of the plan is modified to add the following:
>
> Class 7 claimants shall receive an aggregate dividend of $0. (Vick, Mercado plans).

## C.    The Confirmation Procedure for Debtors' Plans

The San Jose bankruptcy court has on its website a chapter 13 calendar procedure packet along with forms.[7]  The procedures

---

[7] Under Fed. R. Evid. 201, we can take judicial notice of the bankruptcy court's website, www.canb.uscourts.gov, which contains a link to the chapter 13 calendar procedure packet.  See (continued...)

provide that chapter 13 cases ready for confirmation will be confirmed expeditiously. Confirmation hearings are initially set on a "Chapter 13 Uncontested Confirmation Calendar." Absent timely objection and upon finding that the requirements of § 1325(a) are satisfied, the bankruptcy court will confirm the plan at the confirmation hearing. The procedures state that cases will be considered ready for confirmation when (1) the § 341(a) meeting of creditors has concluded; (2) no objections to confirmation have been filed, or such objections have been resolved or withdrawn without judicial intervention; (3) payments under the proposed plan are current; and (4) there are no other unresolved deficiencies.

Cases that are not ready for confirmation are placed on Trustee's pending list (TPL). It is generally up to Trustee to monitor the cases on the TPL. If the deficiencies have been cured, outstanding objections resolved, and payments are current, the matter is restored to the "Uncontested Confirmation Calendar." However, when matters are not resolved, parties are instructed to follow the same rules that apply to any motion in a bankruptcy case as provided by BLR 9014-1(a). Matters may be set for hearing on any available contested confirmation calendar date.

Because Debtors attached additional provisions to the Model Plan, the bankruptcy court directed Trustee to move their

[7](...continued)
Daniels-Hall v. Nat'l Educ. Ass'n., 629 F.3d 992, 998-99 (9th Cir. 2010) (taking judicial notice of information on the websites of two school districts because they were government entities); New Mexico v. Bureau of Land Mgmt., 565 F.3d 683, 702 (10th Cir. 2009) (courts may take judicial notice of government websites).

cases to the TPL so that the court would have the opportunity to determine if the additional provisions complied with the Bankruptcy Code. Counsel then filed motions for confirmation of the five uncontested plans, prepared supporting declarations and set hearings for the motions on the bankruptcy court's earliest contested confirmation calendars and served all creditors.

At the initial confirmation hearings, the bankruptcy court expressed its concerns about the additional provisions and made some preliminary comments about the plans' confirmability.[8] Each case was then set for an evidentiary hearing or trial on confirmation. In advance of the hearings, the bankruptcy court issued scheduling orders directing Counsel to address certain legal issues raised by the additional provisions. Debtors filed initial and supplemental briefs addressing those questions.

G&H, counsel in the Candalla, Escarcega, and Sisk cases, objected to the procedure described above, contending that it violated the Bankruptcy Code. It argued that the initial hearing for each Debtor did not qualify as a confirmation hearing under § 1324(b) since confirmation of the plan was not substantively considered by the court at that hearing. G&H further asserted that all of the evidentiary hearings were held after the 45-day limit in § 1324(b) for a confirmation hearing. Accordingly, G&H maintained that the court violated § 1324(b) by failing to provide a procedure to calendar and hold timely and substantive confirmation hearings for its clients' proposed

---

[8] The bankruptcy court perceived that the practice in the San Jose Division was the routine early termination of chapter 13 plans without formally modifying the plan and without providing notice to anyone.

-11-

chapter 13 plans — all of which were uncontested.[9]

After the evidentiary hearings or trials for all Debtors, the bankruptcy court took the matters under submission.

**D.    The Bankruptcy Court's Joint Memorandum Decision**

The bankruptcy court issued its joint memorandum decision on September 26, 2016, which was signed by the two judges assigned to Debtors' cases.

Addressing the procedural argument first, the bankruptcy court overruled G&H's argument that the multiple hearings on confirmation failed to comply with the 45-day time limit for confirmation under § 1324(b).  The court noted that nothing in the statute required a substantive or conclusive hearing within the 45-day period.  The court further found that placing Debtors' cases on the TPL was not tantamount to a de facto local rule that violated federal law.  Rather, the bankruptcy court explained that it had a duty to consider whether a chapter 13 plan complied with the Bankruptcy Code and it adopted a procedure to decide that question.

Next, the bankruptcy court disallowed additional provisions 5.02(a) and 5.03 on the ground that those provisions violated §§ 1328(a) and 1329(b) and, therefore, rendered the plans unconfirmable under § 1325(a)(1) as a matter of law.  In reaching its decision, the court relied upon a number of cases in this Circuit to support its holding that Debtors were

---

[9] G&H was also concerned that the delay in confirming the plans would delay the start of the payment of attorney's fees. G&H asked the bankruptcy court to consider authorizing or ordering Trustee to start paying fees on these cases or ones similarly situated prior to confirmation.

-12-

required to specify the length of their plans and, absent modification, perform for that time period. See Anderson v. Satterlee (In re Anderson), 21 F.3d 355, 358 (9th Cir. 1994) (self-modifying plans are not authorized under the Code); In re Flores, 735 F.3d 855 (bankruptcy court may confirm a chapter 13 plan only if the plan's duration is at least as long as the applicable commitment period, even if the debtor has no projected income); In re Fridley, 380 B.R. at 546 ("[T]he statutory concept of 'completion' of payments [under §§ 1328 and 1329] includes completion of the requisite period of time . . . . "); Sunahara v. Burchard (In re Sunahara), 326 B.R. 768 (9th Cir. BAP 2005) (Bankruptcy Code allows a debtor to modify a confirmed chapter 13 plan to complete the plan in less than 36 months without paying all claims in full, so long as Bankruptcy Code requirements for plan modification are satisfied; i.e., good faith); In re Keller, 329 B.R. 697 (Bankr. E.D. Cal. 2005) (early payoff with lump sum payment preempts the right of the trustee and the unsecured creditors to propose a modified plan during the remaining term of the plan should the circumstances warrant a modification). The court construed these cases collectively as standing for the proposition that a debtor who proposes a plan must perform under that plan over the term of the plan and, if the debtor's circumstances change, the debtor, creditors, or the chapter 13 trustee are entitled to ask that the plan be modified.

The bankruptcy court also observed that under the prior San Jose form plan, any additional funds received above the stated percent or amount were returned to debtors unless Trustee

-13-

obtained an order modifying the plan authorizing distribution of the additional funds. The court stated that Debtors hoped to "perpetuate this practice" by adding additional provisions 5.02(a) and 5.03.

The bankruptcy court concluded that Debtors' modifications to the Model Plan were deliberately calculated to prohibit the Trustee from distributing excess funds. Accordingly, the bankruptcy court found that Debtors' plans were not proposed in good faith.

Debtors each filed a timely notice of appeal from the bankruptcy court's orders denying confirmation of their plans. As the orders were interlocutory, the Panel granted Debtors' leave to appeal on November 29, 2016.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(L). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

A. Whether the bankruptcy court's procedure for considering confirmation of Debtors' plans was tantamount to a de facto rule which abridged Debtors' substantive rights and violated § 1324(b).

B. Whether the bankruptcy court erred by finding that Debtors' additional provisions 5.02(a) and 5.03 violated the Bankruptcy Code.

C. Whether the bankruptcy court erred in finding that Debtors did not file their plans in good faith.

-14-

# IV.  STANDARDS OF REVIEW

The validity of a local court rule is a question of law reviewed de novo.  Pham v. Golden (In re Pham), 536 B.R. 424, 430 (9th Cir. BAP 2015).

The bankruptcy court's conclusions of law and interpretation of the Bankruptcy Code are reviewed de novo. Boukatch v. Midfirst Bank (In re Boukatch), 533 B.R. 292, 294 (9th Cir. BAP 2015).

The standard of review for a denial of confirmation is two part:  (1) factual questions are reviewed for clear error; and (2) legal questions are reviewed de novo.  Fid. & Cas. Co. of N.Y. v. Warren (In re Warren), 89 B.R. 87, 90 (9th Cir. BAP 1988).  An exercise of discretion based on an incorrect conclusion of law is also reviewed de novo.  Id.

A bankruptcy court's decision that a debtor's plan was not proposed in good faith is a finding of fact reviewed for clear error.  Mattson v. Home (In re Mattson), 468 B.R. 361, 367 (9th Cir. BAP 2012) (citing Downey Savs. and Loan Ass'n v. Metz (In re Metz), 820 F.2d 1495, 1497 (9th Cir. 1987)).  A factual finding is clearly erroneous if it is illogical, implausible, or without support in inferences that can be drawn from the facts in the record.  United States v. Hinkson, 585 F.3d 1247, 1262-63 (9th Cir. 2009) (en banc).

# V.  DISCUSSION

## A.  The Framework of Chapter 13:  Plan Confirmation and Discharge

The chapter 13 plan confirmation process implicates a number of different Bankruptcy Code sections and rules.  Chapter

-15-

13 debtors must file a plan under which they agree to make monthly payments to a trustee from their future income which will be distributed to pay their creditors' claims in part or full.  See § 1321 ("The debtor shall file a plan.").  Section 1322(a) contains a list of provisions that must be contained in a chapter 13 plan and § 1322(b) contains a list of provisions that may be contained in plan.  Section 1322(b)(11) provides that the plan may "include any other appropriate provision not inconsistent with this title."

Section 1325 contains the requirements for confirmation of a chapter 13 plan.  Among the requirements is that the plan must comply with the provisions of chapter 13 and with other applicable provisions of the Bankruptcy Code.  See § 1325(a)(1).  The plan must also have "been proposed in good faith and not by any means forbidden by law."  § 1325(a)(3).

A plan that includes the required components of § 1322, and satisfies the general confirmation requirements of § 1325(a), is generally confirmed.  However, when the chapter 13 trustee or an unsecured creditor objects to plan confirmation, § 1325(b) applies.  That section provides in relevant part:

> (1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan —
>
>     . . . .
>
>     (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

For purposes of this subsection, the "applicable commitment

-16-

period" (ACP) shall be —

(i) 3 years; or

(ii) not less than 5 years, if [the debtor is above median]; and ... may be less than 3 or 5 years, whichever is applicable ..., but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

§1325(b)(4).

Whether the plan is objected to or not, bankruptcy courts must make an independent determination that a chapter 13 plan satisfies the requirements of the Bankruptcy Code. United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 278 (2010) (Section 1325(a) "instructs a bankruptcy court to confirm a plan only if the court finds, **inter alia**, that the plan complies with the 'applicable provisions' of the Code. . . . [T]he Code makes plain that the bankruptcy courts have the authority - indeed, the obligation - to direct a debtor to conform his plan to the requirements of . . . [the Code].").

Section 1329(a) provides for modification of the plan after confirmation but before completion: "Any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim...." A plan may be modified to extend or reduce the time for payments under the plan. § 1329(a)(2). Plan modifications are subject to the plan requirements set forth in §§ 1322(a), 1322(b), and 1323(c), as well as the requirements of § 1325(a). See § 1329(b)(1). Rule 3015(g) requires that not less than 21 days notice of proposed plan modifications be sent to the debtor, the chapter 13 trustee and all creditors fixing the time

-17-

for filing objections.

Debtors who complete all payments required by a confirmed chapter 13 plan are eligible for a discharge. See § 1328(a).

**B.** **The bankruptcy court's confirmation procedure for Debtors' plans did not amount to a de facto local rule or violate § 1324(b).**

G&H argues on appeal that by subjecting its clients to the more burdensome confirmation procedures, the bankruptcy court established an unwritten de facto local rule which abridged its client's substantive rights contrary to 28 U.S.C. § 2075[10] and violated § 1324(b). We disagree.

Section 1324(b) provides:

> (b) The hearing on confirmation of the plan may be held not earlier than 20 days and not later than 45 days after the date of the meeting of creditors under section 341(a), unless the court determines that it would be in the best interests of the creditors and the estate to hold such hearing at an earlier date and there is no objection to such earlier date.

The initial plan confirmation hearings were held within 45 days of the § 341(a) meeting. As the bankruptcy court properly found, § 1324(b) requires that the court convene a hearing on confirmation of the plan between 20 and 45 days after the meeting of creditors under § 341, but nothing in the statute requires a substantive or conclusive hearing within this period. See In re Jones, 2017 WL 1364967, at *1 (Bankr. D. Maine, Apr.

---

[10] 28 U.S.C. § 2075 provides in relevant part:

The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11.

Such rules shall not abridge, enlarge, or modify any substantive right.

-18-

12, 2017) (agreeing with In re Escarcega, 557 B.R. 755, 762-63 (Bankr. N.D. Cal. 2016), and contrasting § 1324 with § 1224); In re Barajas, 2006 WL 3254483, at *8 (Bankr. E.D. Cal. Nov. 8, 2006) (Section 1324(b) does not require that a plan be confirmed within 45 days of the § 341(a) meeting of creditors, but requires only a hearing). Section 1224 states:

> After expedited notice, the court shall hold a hearing on confirmation of the plan. A party in interest, the trustee, or the United States trustee may object to the confirmation of the plan. Except for cause, the hearing **shall be concluded** not later than 45 days after the filing of the plan.

(Emphasis added.) Notably, there is no such language in § 1324(b). Accordingly, there was no violation of § 1324(b).

Further, we do not construe the confirmation procedure used by the bankruptcy court in these cases as a de facto rule which delayed confirmation of Debtors' plans.[11] Although the confirmation procedure may have imposed additional burdens on G&H's clients, bankruptcy courts must make an independent determination that a chapter 13 plan satisfies the requirements of the Bankruptcy Code even if no creditor raises the issue. Espinosa, 559 U.S. at 278. Thus, to ensure that it confirms plans that in are full compliance with the Bankruptcy Code, the bankruptcy court here found it necessary to conduct multiple

---

[11] Even if the procedure used amounted to a de facto rule, courts generally agree that "there is a strong presumption that substantive rights are not abridged or modified by adoption of rules of procedure." In re Beaton, 211 B.R. 755, 763 (Bankr. N.D. Ala. 1997) (citing In re Decker, 595 F.2d 185, 188–89 (3rd Cir. 1979)); Benjamin v. Diamond (In re Mobile Steel Co.), 563 F.2d 692, 699 (5th Cir. 1977). Here, the bankruptcy court's chapter 13 procedure utilized Rule 9014, which pertains to contested matters, and Counsel used that procedure.

hearings to avoid confirming plans which fail to comply with § 1325(a).

In sum, the bankruptcy court's confirmation procedure was neither tantamount to a de facto rule nor did it violate § 1324(b). Accordingly, contrary to G&H's arguments, none of its clients' substantive rights under the Bankruptcy Code were abridged by the confirmation procedure used by the court.

**C.   The Trustee's decision not to object under § 1324(b) is questionable.**

An objection by the chapter 13 trustee or an unsecured creditor would have doomed all of the proposed special provisions. But the standing chapter 13 trustee took the view that it was not her job to raise objections under § 1325(b)(1). We disagree with the trustee's limited conception of her duties. We begin by identifying those duties.

Congress's use of the label "trustee" suggests that a standing chapter 13 trustee owes all of the traditional fiduciary duties of a trustee at common law. But holding a chapter 13 trustee to all of the standard duties of a trustee would create insoluble problems. For example, at common law, trustees owe a fiduciary duty of loyalty to the trust beneficiaries. See Pegram v. Herdrich, 530 U.S. 211, 224 (2000) (stating that "the common law . . . charges fiduciaries with a duty of loyalty to guarantee beneficiaries' interests"). But a chapter 13 trustee could not possibly fulfill a duty of loyalty to all of the creditors, the debtor, and other parties in interest who are beneficiaries of the chapter 13 estate, because there are always conflicts of interest among those

-20-

beneficiaries. The debtor's interests inevitably conflict with those of the creditors: the debtor wishes to pay as little as possible to creditors, while the creditors wish to receive as much as possible from the debtor. There are also conflicts of interest among creditors. Unless the funding of a chapter 13 plan is sufficient to pay all claims in full, every creditor has an incentive to maximize the amount and priority of his own entitlements and to minimize the amount and priority of all other creditors' entitlements. In these circumstances, a standing chapter 13 trustee could not possibly protect the individual interests of the debtor and each and every creditor, as the fiduciary duty of loyalty would require him to do. Therefore, a chapter 13 trustee does not owe all of the duties of a traditional trustee at common law.

It is sometimes said that a chapter 13 trustee owes fiduciary duties primarily to unsecured creditors, but this is a mistake. Andrews v. Loheit (In re Andrews), 49 F.3d 1404, 1407 (9th Cir. 1995) ("the primary purpose of the Chapter 13 trustee is not just to serve the interests of the unsecured creditors, but rather, to serve the interests of all creditors."). It is more accurate to say that, "the trustee's role spans the many competing interests in Chapter 13 cases. The trustee in a Chapter 13 case works with everyone and for no one." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 58.1, www.Ch13online.com.

Instead of looking to the common law, we turn to the duties which the Code imposes on chapter 13 trustees. In relevant part, the Code provides that, "The trustee shall . . . appear

-21-

and be heard at any hearing that concerns . . . confirmation of a plan . . . ." § 1302(b).

The Ninth Circuit has held that § 1302(b) permits the chapter 13 trustee to object to plan confirmation on any ground, including grounds that protect specific groups of creditors rather that the entire creditor body. In re Andrews, 49 F.3d at 1407-08 ("in order for a plan to be confirmed, each of the requirements of section 1325 must be present . . . . Thus, in reviewing the plan for confirmation, the Chapter 13 trustee may object if the plan fails to conform to all requirements in the Bankruptcy Code, not just § 1325(a)(5)." (citations and quotation marks omitted)).

This panel has gone one step further and held that, "The chapter 13 trustee has an affirmative statutory duty to appear and be heard on the question of plan confirmation. . . . The trustee is charged with serving the interests of all creditors, secured and unsecured. . . . Thus, not only did the trustee have the right to appear, he had the obligation to appear and to object." Meyer v. Hill (In re Hill), 268 B.R. 548, 554-55 (9th Cir. BAP 2001); see also Searles v. Riley (In re Searles), 317 B.R. 368, 374 (9th Cir. BAP 2004) ("the chapter 13 trustee has a duty to appear and be heard on plan confirmation . . . ."); In re Jordan, 555 B.R. 636, 655 n.15 (Bankr. S.D. Ohio 2016) (citing and quoting In re Hill).

One court has explained why chapter 13 trustees must take a position on plan confirmation:

> Unsecured creditors often have such small claims and such a low expectation of any payment that they do not retain counsel and they do not object to confirmation. The Chapter 13 standing trustee is paid from the

-22-

> bankruptcy estate, and the trustee has fiduciary duties to creditors. The trustee is clearly required to "appear and be heard" at any confirmation hearing . . . . [T]he requirement that the trustee "be heard" suggests that the trustee must make a recommendation for or against confirmation. . . . The trustee may not equivocate about confirmation. The trustee must either recommend confirmation or object to confirmation. The Chapter 13 standing trustee should thus review all Chapter 13 plans in detail and should file objections to confirmation and claimed exemptions where warranted.

In re Foulk, 134 B.R. 929, 931 (Bankr. D. Neb. 1991).

Imposing a duty on chapter 13 trustees to object to plans whenever appropriate is necessary to permit the bankruptcy court to do its job. The Supreme Court has held that the bankruptcy court should not approve a plan providing for the discharge of student loans without making a determination of "undue hardship," even if the student loan creditor does not object to plan confirmation. United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 278 (2010) ("to comply with § 523(a)(8)'s directive, the bankruptcy court must make an independent determination of undue hardship before a plan is confirmed, even if the creditor fails to object or appear in the adversary proceeding"). As we have noted above, this suggests that the bankruptcy court has an independent obligation, even in the absence of any creditor objection, to ascertain that all plan confirmation requirements are met. The bankruptcy court could not effectively carry out this responsibility without the chapter 13 trustee's assistance. Unlike the court, the trustee can ask questions of the debtor informally and at the meeting of creditors under § 341. The trustee, and not the court, is in a position to ask the questions that test the confirmability of

-23-

the debtor's plan.

The chapter 13 trustee in these cases made a deliberate decision not to raise any objections under § 1325(b). If the Trustee had done so, these debtors would have had to propose plans with three- or five-year minimum durations. The Ninth Circuit's en banc decision in Flores, holds that a debtor's plan must provide for payments for the entire "applicable commitment period" even if the debtor has no "disposable income."

The Trustee in these cases accurately described Flores as "impactful," because it means that, if the trustee or an unsecured creditor objects, debtors must remain in chapter 13 longer. If the debtor truly has no "disposable income," the extended duration would not require the debtor to pay anything to unsecured creditors. But, as we point out above, the test has a powerful indirect effect; as long as the debtor's plan term continues, the plan is subject to modification under § 1329. This means that, if the debtor's net income rises, the trustee or a creditor could move for a modification of the plan that would require the debtor to pay more to unsecured creditors. Therefore, debtors have an interest in keeping the duration of their plans as short as possible, while unsecured creditors want maximum plan durations.

Faced with this conflict of interest, the Trustee chose to take the side of the debtors. She told the chapter 13 debtors' bar that she would prepare and send to Debtors' counsel a "draft objection" to the plan, so that Debtors' counsel could resolve her concerns and induce her to recommend confirmation. She did not file her objections precisely because "my objections trigger

-24-

a commitment period under 1325(b)(1)(B)."

As far as we can tell from the record, the chapter 13 Trustee never explained why she made this choice. She evidently is careful to raise informally any objection that is available under § 1325(a), but has simply decided that it is not her job to raise objections under § 1325(b). In fact, she employed the draft objection procedure in order to avoid the risk of inadvertently triggering § 1325(b), even though that procedure requires her and her staff to do more work.[12] We do not think that the Trustee's choice can be justified.

A respected commentator argues that:

> Creditors are responsible for representing their own interests in Chapter 13 cases, including objecting to confirmation when appropriate. The Chapter 13 trustee cannot substitute for diligent creditor policing of Chapter 13 plans. That the trustee shall appear and be heard with respect to confirmation should not be misinterpreted to mean that the Chapter 13 trustee has the duty to identify all objections to confirmation and to raise those objections without regard to whether creditors are protecting themselves.

Chapter 13 Bankruptcy § 58.5. We agree that chapter 13 trustees have a difficult job and that creditors are well advised to protect their own interests. We cannot agree, however, that a chapter 13 trustee should decide on a categorical basis, for no apparent reason, not to raise an important objection which could

---

[12] We encourage trustees, debtors, and creditors to attempt to resolve disputes without court intervention, because that saves the parties time and money. We cannot agree, however, that a standing chapter 13 trustee should agree with debtors' counsel to adopt a special procedure for the express purpose of depriving unsecured creditors of the benefits of a § 1325(b) objection.

benefit unsecured creditors.[13]

**D.  The bankruptcy court did not err in finding that Debtors' additional provisions 5.02(a) and 5.03 violated the Bankruptcy Code.**

The bankruptcy court found that Debtors' additional provisions 5.02(a) and 5.03 did not comply with §§ 1328(a) and 1329(a) and thus rendered the plans unconfirmable under § 1325(a)(1) as a matter of law.

### 1.  Counsel's Arguments

Counsel argue that the bankruptcy court erred by finding that initial chapter 13 plans must have a fixed duration prior to completion and discharge.  They assert that the holdings in Fridley and Sunahara do not support the bankruptcy court's decision because those cases involved confirmed plans whereas Debtors in this appeal are contesting the bankruptcy court's requirement that they include a temporal requirement in their initial plans.  According to Counsel, this is a critical distinction; if Debtors' initial plans do not draw any § 1325(b) objections, Debtors need only comply with §§ 1322 and 1325(a).  Neither of those sections requires a minimum duration for a plan which has not been objected to.

Counsel further contend that Flores supports their position that Debtors were not required to perform under their plans for

---

[13] Arguably, the bankruptcy court could raise the § 1325(b) issue itself.  See § 105(a) ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to prevent the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.").  Because the bankruptcy court did not address this issue, we will not discuss it in the first instance on appeal.

-26-

a fixed duration of time.  In Flores, the Ninth Circuit noted:

> Our interpretation of § 1325(b)(1)(B) does not render that provision redundant with § 1322(d), which sets forth the maximum periods of time for a chapter 13 bankruptcy, because § 1325(b)(1)(B) concerns the plan's **minimum** duration. . . .  Furthermore, § 1325(b) is triggered only if the trustee or a creditor objects, whereas § 1322(d) applies in all cases, a distinction that suggests that Congress intended the sections to serve different functions.

In re Flores, 735 F.3d at 858 n.5.  Relying on this footnote, Counsel argue that only an objection under § 1325(b) can prevent a debtor from exercising the debtor's right to propose and receive the benefits of a plan that, by its own language, may complete before or even after its initially estimated term, due to the many variables that make it impossible to predict the plan's exact duration at the plan's outset.

Finally, Counsel assert that "probable or expected plan durations" have long been typical in initial proposed plans.  In United States v. Estus (In re Estus), 695 F.2d 311, 317 (8th Cir. 1982), the court held that in applying the Code's § 1325(a)(3)'s good faith requirement, a list of factors should guide the court, including consideration of "the probable or expected duration of the plan."  See also Brown v. Gore (In re Brown), 742 F.3d 1309, 1316 (11th Cir. 2014); Meyer v. Lepe (In re Lepe), 470 B.R. 851, 857 (9th Cir. BAP 2012); In re Warren, 89 B.R. at 93; Villanueva v. Dowell (In re Vallanueva), 274 B.R. 836, 841 (9th Cir. BAP 2002).  This "traditional good faith factor," Counsel argue, is irreconcilable with a durational requirement that must be included in all proposed chapter 13 plans.  Based on these cases, and due to the lack of a statute mandating a fixed term for chapter 13 plans which have not been

-27-

objected to, Counsel assert that Debtors could modify the Model Plan by "estimating" the length of their plans or providing early termination language.[14]

## 2. Analysis

We are not persuaded by any of these arguments. Granted, there is no language in §§ 1322 and 1325(a) that requires a chapter 13 plan to provide a fixed term or a minimum duration before completion or discharge in the absence of an objection. Counsel imply that the statutes' silence must be construed to mean that Debtors have unfettered discretion to pay off their plans earlier than the time period specified in section 1.01(a) of the Model Plan, thereby completing their plans for purposes of obtaining an early discharge and emerging from chapter 13. After all, they cannot state the length of the plans with any accuracy due to multiple variables, including the chapter 13 trustee's fee percentage. This math problem only exists, however, because Counsel for these Debtors want to ensure that Debtors will never pay a single penny to nonpriority unsecured creditors without having to file their own plan modification.

Under statutory interpretation principles, the absence of any express reference in §§ 1322 or 1325(a) to a fixed term or

---

[14] The National Association of Consumer Bankruptcy Attorneys as Amicus Curiae support Counsel's position. Amicus Curiae argues that in the absence of an objection, the plain language of the Bankruptcy Code indicates no specific time period is required for chapter 13 plans and thus the bankruptcy court erred in judicially creating an implied temporal requirement for plan confirmation. Amicus Curiae further assert that the flexibility of chapter 13 should not be compromised by the court's legislation and manipulation of the Bankruptcy Code so as to impose a rigid durational requirement.

minimum duration of time pertaining to a chapter 13 plan which has not been objected to cannot be taken as conclusive evidence of Congress's approval of Debtors' additional provisions 5.02(a) and 5.03. "An inference drawn from a legislature's silence certainly cannot be credited when it is contrary to all other textural and contextual evidence of congressional intent." Burns v. United States, 501 U.S. 129, 136 (1991) (abrogated on other grounds by United States v. Booker, 543 U.S. 220 (2005)). Therefore, we give no credence to Counsel's reliance on Congress's silence in §§ 1322 and 1325(a) regarding a fixed or minimum term for chapter 13 plans which have not been objected to.

Looking at the statutory scheme as a whole, §§ 1328 and 1329 governing discharge and plan modifications, respectively, are clearly material to the issues at hand. These statutes are applicable to all chapter 13 debtors whether a party has objected to their plans or not. Section 1328 provides that "as soon as practicable after completion by the debtor of all payments under the plan, . . . the court shall grant the debtor a discharge of all debts provided for by the plan. . . ." Section 1329 provides in relevant part:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to —
>
> (1) increase or reduce the amount of payments . . . .
>
> (2) extend or reduce the time for such payments. . . .

Under the plain language of § 1329(a)(1), a trustee or unsecured creditor can seek to modify the initial plan by

-29-

increasing the amount of payments if a debtor experiences an increase in income postconfirmation.[15] Subsection (a)(2) explicitly allows a debtor to extend or shorten the term of his or her initial plan. What principled basis would there be for including subsections (a)(1) and (2) in § 1329 if a debtor, whose plan had not been objected to, had unfettered discretion to decide whether to pay off his or her plan early, thereby "completing" payments under the plan for purposes of discharge and plan modification - and without complying with the requirements for plan modification? There is none. Counsel would effectively have us read § 1329 out of existence.

Additional provisions 5.02(a) and 5.03 essentially give Debtors the right to pay off their plans and emerge from chapter 13 prior to the expiration of the term of their plan set forth in § 1.01(a) of the Model Plan without the necessity of going through the plan modification process or giving notice to Trustee or unsecured creditors (who receive nothing under Debtors' plans). Yet, Trustee and unsecured creditors have the right to seek modification after confirmation of Debtors' plans, but before completion of payments. The early termination language in additional provision 5.02(a)[16] effectively cuts off the rights of Trustee and unsecured creditors to seek

---

[15] Likewise, a debtor could seek to reduce the amount of his or her payments if his or her income decreased postpetition.

[16] Section 5.02(a) states: "Notwithstanding [s]ection 1.01(a) [of the Model Plan], once the debtor has paid all allowed secured and priority claims and administrative expenses as provided for in this plan, the plan shall be deemed completed and no further payment to the Trustee shall be required."

modification should Debtors' income increase postconfirmation.[17] Estimating a plan length produces the same result, as neither Trustee nor unsecured creditors would know when the plan is complete for purposes of seeking modification. See In re Keller, 329 B.R. at 700 ("[W]hen a debtor makes an accelerated lump sum payment rather than the regular monthly payments required by the plan, the debtor is preempting the right of the trustee and the unsecured creditors to propose a modified plan should circumstances (such as an increase in the debtor's income) warrant a modification.").

Debtors cannot unilaterally skirt the specific procedural safeguards that apply to plan modifications:

> Plan modification requires that notice and an opportunity to be heard be provided to the chapter 13 trustee and all concerned creditors. Rule 3015(g). The plan modification process also allows for the court to consider the debtor's good faith in proposing early payoff modifications, as well as issues as to the debtor's overall financial circumstances, future earnings and income, and the elimination of future risks of nonperformance. In re Sunahara, 326 B.R. at 781–82. What it does not allow is for the debtor to pay off a chapter 13 plan in a lump sum and present the trustee and creditors with the payoff as fait accompli, with no notice or opportunity for hearing.

In re Schiffman, 338 B.R. 422, 435 (Bankr. D. Or. 2006).

In sum, allowing additional provisions 5.02(a) and 5.03 would render § 1329 a nullity at least insofar as it allows

---

[17] The bankruptcy court's reference to the Mercado case underscores the point. The Mercados proposed a 36 month plan. At the evidentiary hearing, Mr. Mercado testified that Mrs. Mercado, although not presently working due to the birth of the couple's child, planned to resume working as a nurse within the 36 month period. Therefore, the early termination language would have eliminated any opportunity for unsecured creditors to receive a distribution despite the Mercados' increased income.

-31-

parties other than the debtor to seek to modify a plan. We cannot construe statutes in a way which renders them a nullity. Cty. of Santa Cruz v. Cervantes (In re Cervantes), 219 F.3d 955, 961 (9th Cir. 2000). In this Circuit, a plan provision which amounts to a plan modification without notice to the chapter 13 trustee or unsecured creditors and without otherwise complying with the plan modification provisions under § 1329 is not authorized. In re Schiffman, 338 B.R. at 435; see also In re Anderson, 21 F.3d at 357-58.

Fridley supports this analysis. In Fridley, this panel considered the interplay between discharge, plan modification, and plan duration in connection with the phrase "completion" of payments in §§ 1328 and 1329. To constitute "completion" of payments for purposes of discharge or plan modification, the Fridley panel confirmed that payments under a plan have to continue for the duration provided for in the initial plan, absent modification, before being considered "complete" for purposes of modification and discharge. Fridley, 380 B.R. at 543-44.

In Fridley, the below median income debtors proposed a plan with a 36-month applicable commitment period (ACP) with no payment to unsecured creditors. The debtors' income increased postconfirmation, enabling them to pay off their plan in 14 months. The debtors filed a motion seeking a discharge and the chapter 13 trustee objected, contending that the debtors' plan required that they remain in chapter 13 for the minimum 36 months. This would give the trustee time to modify the plan and capture payments for unsecured creditors not anticipated by the

-32-

confirmed plan. The bankruptcy court denied the debtors' motion for entry of discharge.

This panel affirmed, concluding that the debtors' confirmed plan required a 36-month duration. The panel reasoned that the confirmed plan specified that length and to shorten the plan's length, a motion to modify under § 1329(a) would be required. In addition, the panel found that §§ 1328(a) and 1329(a) conferred an implied temporal requirement that a plan remain in effect for its designated duration unless formally modified.

In reaching its conclusion, the panel considered §§ 1328(a) and 1329(a) in connection with the ACP under § 1325(b)(1). The panel decided that the three year ACP in § 1325(b)(1) operated as a temporal requirement. 380 B.R. at 546. Accordingly, the panel interpreted the phrases "completion by the debtor of all payments under the plan" and "completion of payments under [t]he plan" in §§ 1328(a) and 1329 respectively, finding that those phrases included an implied temporal requirement that a chapter 13 plan remain in effect for the ACP as specified in the plan. The panel concluded that "the statutory concept of 'completion' of payments [under §§ 1328 and 1329] includes the completion of the requisite period of time." Id. at 546. In the end, the Fridley panel observed:

> A debtor desiring to prepay a chapter 13 plan and obtain an early discharge without paying allowed unsecured claims in full must follow the § 1329 modification procedure prescribed by Rule 3015(g). In exchange for a § 1328(a) discharge of more debts than can be discharged in chapter 7, the debtor's increases in income are exposed to the risk of being captured by way of § 1329 modifications proposed by the trustee or an unsecured creditor. The debtor cannot short-circuit that exposure merely by prepayment, but rather must obtain a § 1329 plan modification after having given the notice required by Rule 3015(g).

-33-

Id. at 544. Cf. In re Sunahara, 326 B.R. at 781 ("In determining whether to authorize modification that reduces a plan term to less than 36 months without full payment of allowed claims, the bankruptcy court should carefully consider whether the modification has been proposed in good faith.").

Fridley's reasoning in support of its holding is equally applicable to these cases. Carefully parsed, the phrases referring to the "completion" of payments in §§ 1328 and 1329 are linked to the duration of the plan which is either fixed by the statutory ACP or, in the absence of an objection, by the debtor. In other words, the "completion" of payments in §§ 1328 and 1329, which apply to all chapter 13 debtors, relates to the time period set forth in the initial plan and not the amount of the payments. It follows that for "completion" of payments to relate to a time period, that time period must be specifically stated in the plan.

In addition, Fridley underscores the necessity of seeking plan modification to shorten the length of a plan before the "completion" of payments. The BAP emphasized: In exchange for the benefits of filing chapter 13 (over chapter 7), the debtor must pay a price - the debtor's increases in income are exposed to the risk of being captured by the trustee or an unsecured creditor. The possibility of capturing increases in income necessitates that the chapter 13 trustee or unsecured creditors are apprised of the term of the plan so that they can seek modification if the Debtor's income increases. That term cannot be undefined simply because Debtors' plans offered to pay unsecured creditors nothing. See In re Schiffman, 338 B.R. at

-34-

434 ("[E]arly payoff proposals . . . present opportunities for abuse by the less than forthcoming debtor.").

The reasons for holding a chapter 13 debtor to a plan for a definite period of time were addressed by the Ninth Circuit in Flores. Again, the analysis in Flores was intertwined with plan modification under § 1329. The Flores court held that "a bankruptcy court may confirm a Chapter 13 plan under . . . § 1325(b)(1)(B) only if the plan's duration is at least as long as the applicable commitment period provided by § 1325(b)(4)." 735 F.3d at 862 (overruling Maney v. Kagenveama (In re Kagenveama), 541 F.3d 868 (9th Cir. 2008)).[18] The court observed: "A minimum duration for Chapter 13 plans is crucial to an important purpose of § 1329's modification process: to ensure that unsecured creditors have a mechanism for seeking increased (that is, non-zero) payments if a debtor's financial circumstances improve unexpectedly." Id. at 860. If debtors were not bound to a minimum plan duration, "[c]reditors' opportunity to seek increased payments that correspond to changed circumstances would be undermined." Id.

These cases, taken together, establish that Debtors' plans must specify a length and cannot contain provisions which essentially amount to plan modifications shortening that length without complying with the procedural requirements of § 1329 and without obtaining a court order. There is nothing in the

---

[18] Counsel's reliance on footnote 5 in Flores is without merit. That footnote is not a holding and simply states that § 1325(b)(1)(B) is triggered only if the trustee or a creditor objects, whereas § 1322(d) applies in all cases, a distinction that suggests that Congress intended the two sections to serve different functions.

reasoning or rationale of Anderson, Fridley, Sunahara, or Flores which limits the holdings in those cases to debtors whose plans have been objected to and thus subject to the ACP under § 1325(b)(1). For each class of debtors - those bound to the statutory ACP and those who are not - the payments under the plan cannot be shortened and payments cannot be "completed," absent modification, before the end of a definite period of time designated in the plan whether or not that period of time is fixed by the ACP or the debtor himself or herself.

Counsel have not articulated any Congressional intent nor any policy reason why debtors who have no ACP can terminate their plans before the expiration of a plan term which they have chosen by inserting additional provisions to the Model Plan. Nowhere do Counsel discuss § 1329 or the requirements for plan modification.

Moreover, the result the bankruptcy court reached is consistent with Congress's intent in enacting BAPCPA which was to ensure that debtors repay creditors the maximum they can afford. Ransom, 131 S. Ct. at 728; see also Baud v. Carroll, 634 F.3d 327, 356 (6th Cir. 2011) ("[T]he focus of Congress in enacting BAPCPA was on maximizing the amount of disposable income that debtors would pay to creditors. And there are numerous circumstances in which disposable income might become available to [a debtor] after confirmation . . . ."); In re Tennyson, 611 F.3d at 879. It is not for this panel to contravene that policy.

Counsel argue that whether § 1325(a)(1) imports §§ 1328(a) and 1329(a) is the question to be considered here. They contend

-36-

that § 1329 applies only to plans that have already been confirmed. Therefore, according to Counsel, § 1325(a)(1) does not import § 1329 into the confirmation analysis in these case. Counsel are mistaken. Section 1325(a)(1) requires compliance with "the provisions of this chapter and with other applicable provisions of [Title 11]" - no provisions are excluded. Because Debtors' additional provisions 5.02(a) and 5.03 effectively provide for early termination and "completion" of payments without complying with the procedure or requirements for modification under § 1329 and Rule 3015(g), these additional provisions violate §§ 1328 and 1329 and thus render Debtors' plans unconfirmable as a matter of law.

Finally, the case law which uses the "probable or expected duration" of a plan for purposes of a good faith analysis are of little assistance to Debtors. None of the decisions cited by Counsel addressed whether, in the absence of an objection, an initial chapter 13 plan has to have a fixed or minimum term or whether debtors can modify plan forms to give themselves a right to pay off a chapter 13 plan early without adhering to the formal requirements for modification under § 1329. Therefore, the cases that use the "probable or expected duration" for purposes of a good faith analysis are neither controlling nor instructive on that issue. See Engebretson v. Mahoney, 724 F.3d 1034, 1040 (9th Cir. 2013) (prior rulings are not binding precedent on issues that were not squarely addressed).

**E.    The bankruptcy court did not err in finding that Debtors' plans violated § 1325(a)(3).**

All chapter 13 plans must be proposed in good faith and no

-37-

objection is necessary to raise the issue. The "probable or expected duration" of a plan is but one factor to use in a totality of circumstances analysis for purposes of determining good faith under § 1325(a)(3). "[N]o single factor is determinative of the lack of good faith. . . . . [D]eterminations of good faith are made on a case-by-case basis after considering the totality of the circumstances." In re Mattson, 468 B.R. at 371-72 (citing Goeb v. Heid (In re Goeb), 675 F.2d 1386 (9th Cir. 1982)).

In Goeb, the Ninth Circuit set forth a generalized test for good faith: "whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner." 675 F.2d at 1390. The Goeb court emphasized that the scope of the good faith inquiry should be quite broad. Id. at 1390 n.9. "[T]he standards set forth in In re Goeb offer a solid framework for evaluating a variety of circumstances. . . ." In re Mattson, 468 B.R. at 372. Finally, the Ninth Circuit has stated that a good faith analysis under § 1325(a)(3) may consider "the legal effect of the confirmation of a Chapter 13 plan in light of the spirit and purposes of Chapter 13." Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1444 (9th Cir. 1986).

Here, the bankruptcy court found that Debtors' plans were not proposed in good faith based on additional provisions 5.02(a) and 5.03 which violated §§ 1328 and 1329. The court concluded that the plans were deliberately calculated to prohibit the Trustee from distributing excess funds. The record

-38-

amply supports the lack of good faith. Debtors' modifications to the Model Plan put unsecured creditors at a disadvantage and thus amount to an unfair manipulation of the Bankruptcy Code. Moreover, the modifications violated one of the primary purposes behind enactment of BAPCPA which was to maximize payments to unsecured creditors. Debtors' additional provisions, which make an end run around the modification procedure under § 1329 and provide for early discharge under § 1328, blatantly violate that purpose. Accordingly, since the additional provisions violate the Bankruptcy Code and are inconsistent with the overall spirit and policies of chapter 13 and the enactment of BAPCPA, there is no basis to reverse the bankruptcy court's finding on good faith.

**F.  The Model Plan does not exceed the court's rule-making authority.**

Due to our conclusions, we reject Counsel's argument that the Model Plan as written exceeds the bankruptcy court's rule-making authority because it is contrary to the Bankruptcy Code. The Model Plan and its required use do not abridge Debtors' substantive rights. Although the bankruptcy court declined to confirm the plans, its decision does not close the door on Debtors' ability to seek a good faith modification of a confirmed plan with a definite term at a later date pursuant to § 1329. Requesting modification to extend or reduce the time for payments under a plan is permitted by statute. In addition, by disallowing additional provisions 5.02(a) and 5.03, the bankruptcy court ensured that Trustee and unsecured creditors are not foreclosed from seeking modification before completion

of Debtors' plans if Debtors' income increases postconfirmation.[19]

### VI. CONCLUSION

For the reasons stated, we AFFIRM.

---

[19] Although G&H raises other issues with respect to the bankruptcy court's criticisms of documents filed by Escarcega and Candalla, those issues are not material to the resolution of this appeal. Accordingly, it is unnecessary to address them. <u>See Dehart v. Lopatka (In re Lopatka)</u>, 400 B.R. 433, 440 (Bankr. M.D. Pa. 2009) ("The doctrine of judicial restraint suggests that a court should decide the fewest issues necessary to resolve the subject dispute.") (citing <u>Morse v. Frederick</u>, 551 U.S. 393, 431 (2007)); <u>PDK Labs., Inc. v. Drug Enf't Admin.</u>, 362 F.3d 786, 799 (D.C. Cir. 2004) ("[T]he cardinal principle of judicial restraint is that if it is not necessary to decide more, it is necessary not to decide more.").